12-108-cv
*Liberty Synergistics Inc. v. Microflo Ltd.*

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

August Term, 2012

(Argued: February 1, 2013                                    Decided: May 31, 2013)

Docket No. 12-108-cv

_____

LIBERTY SYNERGISTICS INC., a California corporation,

*Plaintiff-Appellee*,

v.

MICROFLO LTD., an inactive New York Corporation, EDWARD MALKIN,
an individual, and ECOTECH LTD., a Cayman Islands Company,

*Defendants-Appellants.*[*]

_____

Before: WALKER, CABRANES, and WESLEY, Circuit Judges.

In this suit—which was originally filed in state court in California, later removed to federal court in California, and then voluntarily transferred to the United States District Court for the Eastern District of New York—the District Court (Sandra J. Feuerstein, *Judge*) denied the defendants' motion to dismiss the suit pursuant to California's anti-Strategic Litigation Against Public Participation ("anti-SLAPP") rule, *see* CAL. CIV. PROC. CODE § 425.16, on the basis that New York law, not California law, governs the plaintiff's malicious prosecution claim.  In short, the

[*] The Clerk of Court is directed to amend the caption as shown above.

1

District Court held that California's anti-SLAPP rule became inapplicable after the suit was transferred to New York. The questions presented in this appeal are: (1) whether the District Court's decision with respect to the inapplicability of California's anti-SLAPP rule is a "collateral order" reviewable on an interlocutory appeal under 28 U.S.C. § 1291; and (2) whether the District Court erred by concluding that California's anti-SLAPP rule is inapplicable in light of its determination that New York law, instead of California law, governs the plaintiff's malicious prosecution claim.

With respect to the first question, we hold that the District Court's decision constitutes an immediately appealable collateral order. With respect to the second question, we hold that the District Court erred in concluding that California's anti-SLAPP rule cannot apply to a claim transferred from a California federal court to a New York federal court and governed, under the *Erie* doctrine, by New York law. In particular, the District Court conflated the relevant *state* choice-of-law question with the separate *federal* choice-of-law inquiry under *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938). State rules that are considered "procedural" under *state law* may still apply in federal diversity suits if those rules are considered "substantive" under *federal law* pursuant to *Erie*. Because the plaintiff initially brought this suit in California and then voluntarily transferred it from a California federal court to the Eastern District of New York pursuant to 28 U.S.C. § 1404(a), and because a California state court would have applied California's anti-SLAPP rule as a procedural matter, the rule is still potentially available following the transfer. *See Ferens v. John Deere Co.*, 494 U.S. 516, 531 (1990).

For these reasons, Liberty's motion to dismiss this appeal for lack of appellate jurisdiction is denied; the order of the District Court denying the defendants' motion to dismiss pursuant to California's anti-SLAPP rule is vacated; and the cause is remanded to the District Court for further

2

consideration of the motion to dismiss, and for such further proceedings as may be appropriate in the circumstances.

DENNIS H. SABOURIN (Eugenie F. Temmler, *on the brief*), Rabner, Allcorn, Baumgart & Ben-Asher, P.C., Montclair, NJ, *for Defendants-Appellants.*

TRACY GRAVES WOLF (Peter T. Shapiro, *on the brief*), Lewis Brisbois Bisgaard & Smith LLP, Dallas, TX, and New York, NY; Harold A. Ducote, Jr., Ducote Law Corporation, PC, Costa Mesa, CA, *for Plaintiff-Appellee.*

JOSÉ A. CABRANES, *Circuit Judge*:

On its face, this appeal involves a somewhat technical issue of federal appellate procedure—namely, whether we have jurisdiction under the "collateral order" doctrine to consider the merits of this interlocutory appeal. But a similarly difficult inquiry, which also bears on our analysis of the jurisdictional question, is whether the District Court properly applied governing choice-of-law principles under the Rules of Decision Act, *see* 28 U.S.C. § 1652,[1] as interpreted in *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938) ("*Erie*"), and its progeny.[2]

The tricky choice-of-law questions raised in this appeal have arisen because this case has progressed through three different venues. The suit, which alleges malicious prosecution with

---

[1] The Rules of Decision Act, which governs in diversity cases, provides: "The laws of the several states, except where the Constitution or treaties of the United States or Acts of Congress otherwise require or provide, shall be regarded as rules of decision in civil actions in the courts of the United States, in cases where they apply." 28 U.S.C. § 1652.

[2] As students of federal civil procedure well recall, the holding of *Erie* was that a federal court sitting in diversity must apply substantive law supplied not only by state *legislation* but also by state *common law*. In the legal lexicon, however, *Erie* has become synonymous with the familiar aphorism that "federal courts sitting in diversity apply state substantive law and federal procedural law." *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427 (1996). Throughout our opinion, we refer to "*Erie*" and the "*Erie* doctrine" in this broader and more familiar sense. In doing so, we are mindful of the legal-realist view, famously articulated by Professor Llewellyn, that "[t]he differentiation between substantive law and adjective law is an illusion." KARL N. LLEWELLYN, THE BRAMBLE BUSH 82–83 (1930); *see also, e.g.*, Larry D. Kramer, *Choice of Law in Complex Litigation*, 71 N.Y.U. L. REV. 547, 569 (1996) ("It is, of course, every procedure teacher's favorite truism that there is no bright line distinguishing substance from procedure, that the meanings of these terms shade into one another by degrees and vary from context to context."). As Professor Llewellyn recognized, however, this distinction "must be taken account of." LLEWELLYN, *supra*, at 83.

respect to prior litigation in federal court in New York between the same parties, was originally filed in California state court, later removed to federal court in California, and then voluntarily transferred to the United States District Court for the Eastern District of New York pursuant to 28 U.S.C. § 1404(a).[3] While the suit was pending in federal court in California, the defendants filed a motion to dismiss under California's anti-Strategic Litigation Against Public Participation ("anti-SLAPP") rule, *see* CAL. CIV. PROC. CODE § 425.16,[4] arguing that the plaintiff's malicious prosecution claim was meritless and intended to inhibit the defendants' constitutionally protected conduct in bringing the suit. After the case was transferred, the United States District Court for the Eastern District of New York (Sandra J. Feuerstein, *Judge*) denied the defendants' pending motion to dismiss, which was based on the purported immunity provided by California's anti-SLAPP rule. The Court concluded that because New York law, not California law, governs the substance of the plaintiff's cause of action, and because the suit was transferred to a federal court in New York, California's anti-SLAPP rule did not apply.

The questions presented in this appeal are: (1) whether the District Court's decision regarding the inapplicability of California's anti-SLAPP rule is a "collateral order" reviewable on an

---

[3] Title 28 U.S.C. § 1404(a) provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."

[4] The Ninth Circuit has summarized California's anti-SLAPP rule as follows:

> California law provides for pre-trial dismissal of . . . lawsuits that masquerade as ordinary lawsuits but are brought to deter common citizens from exercising their political or legal rights or to punish them for doing so. The anti-SLAPP statute was enacted to allow for early dismissal of meritless first amendment cases aimed at chilling expression through costly, time-consuming litigation. If the defendant files an anti-SLAPP motion to strike, all discovery proceedings are stayed. *See* § 425.16(g). A court may, however, permit specified discovery "on noticed motion and for good cause shown." *Id.* In order to prevail on an anti-SLAPP motion, the defendant is required to make a prima facie showing that the plaintiff's suit arises from an act by the defendant made in connection with a public issue in furtherance of the defendant's right to free speech under the United States or California Constitution. The burden then shifts to the plaintiff to establish a reasonable probability that the plaintiff will prevail on his or her defamation claim. The plaintiff must demonstrate that the complaint is legally sufficient and supported by a prima facie showing of facts to sustain a favorable judgment if the evidence submitted by plaintiff is credited.

*Batzel v. Smith*, 333 F.3d 1018, 1023–24 (9th Cir. 2003) (alterations, internal citations, some internal quotation marks, and paragraph breaks omitted).

interlocutory appeal under 28 U.S.C. § 1291; and (2) whether the District Court erred by concluding that California's anti-SLAPP rule is inapplicable in light of its determination that New York law, instead of California law, governs the plaintiff's malicious prosecution claim.

With respect to the first question, we hold that the District Court's denial of the defendants' motion to dismiss under California's anti-SLAPP rule constitutes an immediately appealable collateral order because it (1) conclusively determined the disputed issue; (2) resolved an important question that is completely separate from the merits of the action; and (3) would be effectively unreviewable in a later appeal. *See Will v. Hallock*, 546 U.S. 345, 349 (2006).

With respect to the second question, we hold that the District Court erred in concluding that California's anti-SLAPP rule cannot apply to a claim transferred from a California federal court to a New York federal court and governed, under the *Erie* doctrine, by New York law. In particular, the District Court conflated the relevant *state* choice-of-law question with the separate *federal* choice-of-law inquiry under *Erie*. State rules that are considered "procedural" under *state law* may still apply in federal diversity suits if those rules are considered "substantive" under *federal law* pursuant to *Erie*. Because the plaintiff initially brought this suit in California and then voluntarily transferred it to the Eastern District of New York, and because a California state court would have applied California's anti-SLAPP rule as a procedural matter, the aspects of California's anti-SLAPP rule considered substantive by federal law continue to apply in this case, notwithstanding that the case is now being heard in New York, and notwithstanding that the cause of action is otherwise governed by substantive New York law. *See Ferens v. John Deere Co.*, 494 U.S. 516, 531 (1990).

For these reasons, the District Court's order denying the defendants' motion to dismiss pursuant to California's anti-SLAPP rule is vacated, and the cause is remanded to the District Court for further consideration of the motion to dismiss, and for such further proceedings as may be appropriate in the circumstances.

# BACKGROUND

The plaintiff-appellee in this case, Liberty Synergistics Inc. ("Liberty"), was the defendant in an earlier, now-concluded round of litigation between the same parties in the Eastern District of New York. Thereafter, Liberty filed this malicious prosecution suit in California state court against defendants-appellants Microflo Ltd., Edward Malkin, and Ecotech Ltd. (jointly, "Microflo"). Liberty filed its complaint in California state court on September 17, 2010, alleging that Microflo, in pursuing the previous litigation against Liberty, "undertook no reasonable investigation to verify any of the facts asserted in the[ ] complaint, [and] maintain[ed] the action against Liberty out of motives grounded in spite, malice, and with a vexatious and malicious intent, in complete and utter disregard for the rights of Liberty and others . . . ." Complaint ¶ 27. Microflo removed the case to the Central District of California on November 30, 2010.

Microflo then moved on January 3, 2011, to dismiss the suit under California's anti-SLAPP rule, CAL. CIV. PROC. CODE § 425.16, *see* note 4, *ante*, arguing that Liberty's claim is meritless and is intended to inhibit Microflo's constitutionally protected conduct in petitioning for relief in the prior litigation. Microflo also moved to dismiss the case for lack of personal jurisdiction. Before the California federal court decided these motions, however, it transferred the case on January 12, 2011, to the District Court for the Eastern District of New York ("the District Court"), pursuant to a stipulation by the parties, under 28 U.S.C. § 1404(a), *see* note 3, *ante*.

Later that year, Microflo reasserted its "Motion to Strike" under California's anti-SLAPP rule. Judge Feuerstein referred the matter to Magistrate Judge E. Thomas Boyle, who heard oral argument on October 6, 2011, and issued an amended report and recommendation ("R&R") on October 26, 2011.[5] In his R&R, Magistrate Judge Boyle concluded, *inter alia*, that California law does

---

[5] Judge Feuerstein explained: "Although designated as an 'Amended Memorandum Opinion and Order,' all parties agree that defendants' motion was dispositive and that the parties did not consent to the referral to the magistrate judge. Accordingly, I deem the 'Amended Memorandum Opinion and Order' to be a report and recommendation, subject to

not govern Microflo's motion to dismiss under California's anti-SLAPP rule because, under California's choice-of-law principles, New York law governs Liberty's malicious prosecution claim. In other words, Magistrate Judge Boyle determined that California's anti-SLAPP rule does not apply to a claim governed by New York substantive law and being heard in New York, even though the case was originally brought in California. As Magistrate Judge Boyle explained:

> Defendants have succeeded in their argument that New York substantive law applies to this case. As it applies to this Motion to Strike, however, [their choice-of-law argument] is unavailing.
>
> California Code of Civil Procedure § 425.16—the anti-SLAPP statute under which this Motion to Strike is brought—is California substantive law. *See Batzel v. Smith*, 333 F.3d 1018, 1025–26 (9th Cir. 2003) ("Because California law recognizes the protection of the anti-SLAPP statute as a substantive immunity from suit, this Court, sitting in diversity, will do so as well."). The Ninth Circuit has held that anti-SLAPP motions may be maintained in diversity cases where California provides the law of decision. *See id.*; *see also U.S. ex rel. Newsham v. Lockheed Missiles & Space Co.*, 190 F.3d 963, 971–73 (9th Cir. 1999) (applying certain subsections of California's anti-SLAPP statute to state law counterclaims). However, those decisions are not relevant here because New York, not California, provides the law of decision.
>
> Defendants assert that "California law applies to the anti-SLAPP motion." (Reply at 1). Their only support for this proclamation is that the "action was brought in California state court and the motion was timely filed in Federal District Court in California." (Reply at 2). But, the case has since been transferred to New York and this (New York) Court has determined that California's choice-of-law principles mandate the application of New York law. Defendants have not explained why the mere fact that an anti-SLAPP motion was filed prior to the Court's evaluation of the choice-of-law question should mandate the application of California law to part of this action and New York law to the rest of it. If the argument is that the anti-SLAPP motion somehow conceptually precedes to the choice-of-law decision (that is, that the anti-SLAPP motion should be decided as if the choice-of-law question had not been answered), the Court is equally flummoxed as to the precedential or doctrinal authority that supports this view.

*Liberty Synergistics Inc. v. Microflo Ltd.*, No. CV 11-0523(SJF)(ETB), 2011 WL 4974832, at *11 (E.D.N.Y. Oct. 26, 2011). Judge Feuerstein adopted this aspect of the Magistrate Judge's R&R in an

---

review under 28 U.S.C. § 636(b)(1)(B)." *Liberty Synergistics Inc. v. Microflo Ltd.*, No. CV 11-0523(SJF)(ETB), 2011 WL 6100273, at *1 n.1 (E.D.N.Y. Dec. 1, 2011).

order dated December 1, 2011.  *See Liberty Synergistics Inc. v. Microflo Ltd.*, No. CV 11-0523(SJF)(ETB), 2011 WL 6100273, at \*2 (E.D.N.Y. Dec. 1, 2011).

In this appeal, Microflo contests that part of the District Court's order, arguing that the District Court should have conducted a *separate* choice-of-law analysis with respect to the anti-SLAPP issue rather than viewing that choice-of-law question as derivative of the Court's conclusion that New York substantive law governs Liberty's malicious prosecution claim.  Liberty disputes this argument on the merits and claims, as a jurisdictional matter, that the denial of a motion to dismiss pursuant to California's anti-SLAPP rule is not an immediately appealable order under the collateral order doctrine.[6]

For the reasons stated below, we conclude that appellate jurisdiction exists to consider this appeal.  We also conclude that the District Court erred by denying defendants' motion to dismiss under California's anti-SLAPP rule because of the transfer of the case to New York.  We intimate no views regarding the proper disposition of any other aspect of Microflo's motion, nor do we intimate any views regarding Liberty's underlying malicious prosecution claim, or the substantive law that governs that cause of action.

## DISCUSSION

### A.

It is common ground that jurisdiction is a threshold matter that must exist before a court may decide the merits of an appeal.  *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 93–102 (1998).  As relevant here, our appellate jurisdiction is limited to review of "final decisions" of district

---

[6] On June 1, 2012, prior to the parties' merits briefing, Liberty originally filed a motion in this Court to dismiss the appeal for lack of appellate jurisdiction.  By order dated July 18, 2012, a motions panel of our Court denied the motion, "without prejudice to pursuit before the merits panel," and it referred "all jurisdictional and choice of law questions to the merits panel."  On September 13, 2012, shortly after Microflo filed its opening brief, Liberty refiled its motion to dismiss the appeal for lack of jurisdiction.  That motion remained pending at the time of oral argument, and, for the reasons stated here, it is denied.

8

courts. 28 U.S.C. § 1291.[7] It is undisputed that the District Court has not issued a final judgment or certified any issue for interlocutory appeal under 28 U.S.C. § 1292(b).[8] As a general matter, orders not falling within these categories are not appealable because of the powerful interest in "avoid[ing] the waste of time and the delay in reaching trial finality which ensue when piecemeal appeals are permitted." *Nelson v. Unum Life Ins. Co. of Am.*, 468 F.3d 117, 119 (2d Cir. 2006) (quotation marks omitted). Microflo, however, asserts that we have jurisdiction over this interlocutory appeal by virtue of the collateral order doctrine, which provides for appellate jurisdiction over a small class of "collateral" rulings that do not terminate the litigation in the court below but are nonetheless sufficiently "final" and distinct from the merits to be appealable without waiting for a final judgment to be entered. *See Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546 (1949).

"The requirements for collateral order appeal have been distilled down to three conditions: that an order [1] conclusively determine the disputed question, [2] resolve an important issue completely separate from the merits of the action, and [3] be effectively unreviewable on appeal from a final judgment." *Will*, 546 U.S. at 349 (brackets in original, internal quotation marks omitted). These conditions are "stringent," *id.* (internal quotation marks omitted), and "[t]he justification for immediate appeal must therefore be sufficiently strong to overcome the usual benefits of deferring appeal until litigation concludes," *Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 107 (2009). Moreover, "the issue of appealability under § 1291 is to be determined for the entire category to which a claim belongs, without regard to the chance that the litigation at hand might be speeded, or a particular injustice averted, by a prompt appellate court decision." *Digital Equip. Corp.*

---

[7] Title 28 U.S.C. § 1291 provides, in relevant part: "The courts of appeals . . . shall have jurisdiction of appeals from all final decisions of the district courts of the United States . . . ."

[8] Title 28 U.S.C. § 1292(b) provides that a district court may certify for immediate appellate review an otherwise unappealable order if the court is "of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation . . . ." *Id.* The relevant Court of Appeals then may, "in its discretion, permit an appeal to be taken from such order." *Id.*

9

*v. Desktop Direct, Inc.*, 511 U.S. 863, 868 (1994) (alteration, citation, and internal quotation marks omitted). Whether a particular order falls within the collateral order doctrine is an issue of federal law, even when the order itself relates to a state-law issue. *Budinich v. Bechton Dickinson & Co.*, 486 U.S. 196, 198–99 (1988).

**i.**

We begin by considering whether the District Court's ruling that California's anti-SLAPP rule was inapplicable as a matter of law, following the forum transfer, "conclusively determine[d] the disputed question." *Will*, 546 U.S. at 349 (quotation marks omitted).

"The requirement that the district court's order 'conclusively determine' the question means that appellate review is likely needed to avoid th[e] harm" of delay. *Johnson v. Jones*, 515 U.S. 304, 311 (1995). In this case, the "critical" part of this inquiry is assessing "whether 'the essence' of the claimed right" is either "a right not to stand trial," *Van Cauwenberghe v. Biard*, 486 U.S. 517, 524 (1988) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 525 (1985)), or a right not to "face the other burdens of litigation," *Mitchell*, 472 U.S. at 526. If either such right is at issue, a denial of that right "conclusively determines" the disputed issue by ensuring that "the defendant must bear the burdens of discovery." *Ashcroft v. Iqbal*, 556 U.S. 662, 672 (2009) (alteration and quotation marks omitted).

Whether the "essence" of a right is to protect against the burdens of litigation "should not, and cannot, depend on a party's agility in so characterizing the right asserted." *Digital Equip.*, 511 U.S. at 872. Indeed, "in some sense, all litigants who have a meritorious pretrial claim for dismissal can reasonably claim a right not to stand trial." *Van Cauwenberghe*, 486 U.S. at 524. Accordingly, we must "examine the nature of the right asserted with special care," *id.* at 525, and a certain "skepticism, if not a jaundiced eye," *Digital Equip.*, 511 U.S. at 873, to determine whether an "essential aspect of the claim" is the right to avoid the burdens of litigation, *Van Cauwenberghe*, 486 U.S. at 525. Whether a right satisfies this standard is a question of federal law, *see Budinich*, 486 U.S.

10

at 198–99, but where a state rule is at issue, we look to the state law to determine whether the nature of the right is to protect certain defendants against the burdens of litigation.

The nature of the anti-SLAPP rule is clear. According to the Supreme Court of California, "[t]he point of the anti-SLAPP statute is that you have a right *not* to be dragged through the courts because you exercised your constitutional rights." *Varian Med. Sys., Inc. v. Delfino*, 35 Cal. 4th 180, 193 (2005) (quotation marks omitted). Accordingly, "'[t]he protections afforded by the anti-SLAPP statute against the harassment and burdens of litigation are in large measure lost if the petitioner is forced to litigate a case to its conclusion before obtaining a definitive judgment through the appellate process.'" *Id.* (quoting *Fabre v. Walton*, 436 Mass. 517, 521 (2002)). In line with these observations, the Court of Appeals for the Ninth Circuit has held that the expedited dismissal provisions of the anti-SLAPP rule share the "nature of immunity: They protect the defendant from the burdens of trial, not merely from ultimate judgments of liability."[9] *Batzel v. Smith*, 333 F.3d 1018, 1025 (9th Cir. 2003); *see also id.* (noting that California's anti-SLAPP rule "is designed to protect the defendant from having to litigate meritless cases aimed at chilling First Amendment expression"); *Factors Etc., Inc. v. Pro Arts, Inc.*, 652 F.2d 278, 283 (2d Cir. 1981) (deferring to interpretations of state law by the federal court of appeals covering that state).

We agree. California's anti-SLAPP rule reflects a substantive policy favoring the special protection of certain defendants from the burdens of litigation because they engaged in

---

[9] Although California's anti-SLAPP rule shares in the "*nature* of immunity," *Batzel*, 333 F.3d at 1025 (emphasis supplied), the rule—contrary to the Ninth Circuit's assertion—is *not* "a substantive immunity from suit," *id.* Instead, "the anti-SLAPP statute neither constitutes—nor enables courts to effect—any kind of 'immunity.'" *Jarrow Formulas, Inc. v. LaMarche*, 31 Cal. 4th 728, 738 (2003) (quotation marks omitted). Rather, the expedited dismissal provisions of the anti-SLAPP rule create "a procedure where the trial court evaluates the merits of the lawsuit using a summary-judgment-like procedure at an early stage of the litigation." *Flatley v. Mauro*, 39 Cal. 4th 299, 312 (2006) (quotation marks omitted). Nonetheless, we agree with the Ninth Circuit's conclusion that the "essence" of the anti-SLAPP rule is "to protect the defendant from having to litigate meritless cases aimed at chilling First Amendment expression," *Batzel*, 333 F.3d at 1025, and therefore the denial of this right is sufficiently "final" to satisfy the first prong of the collateral order doctrine. *Cf. Iqbal*, 556 U.S. at 672 (permitting an immediate appeal of a denial of qualified immunity because of the interest in protecting certain defendants against the burdens of litigation, even where the disputed legal issue does not relate to "the qualified immunity defense itself" as a defense to liability).

11

constitutionally protected activity. The denial of this protection through the rejection of a motion to dismiss is sufficiently "final" to meet the first prong of the collateral order doctrine.

**ii.**

The District Court's ruling also satisfies the requirement that the appealed order must "resolve an important issue completely separate from the merits of the action." *Will*, 546 U.S. at 349 (quotation marks omitted). The requirement that the issue be "important" is a pragmatic one, ensuring that "the considerations that favor immediate appeals seem comparatively strong and those that disfavor such appeals seem comparatively weak." *Johnson*, 515 U.S. at 311; *see also Mohawk Indus.*, 558 U.S. at 107. Immediate appeals are generally more appropriate "where purely legal matters are at issue." *Johnson*, 515 U.S. at 316. Whether the question presented is "separate" from the merits depends on whether it turns on matters "significantly different from the fact-related legal issues that likely underlie the plaintiff's claim on the merits." *Id.* at 314.

Several factors favor immediate appeal in this case. First, the questions presented are "neat abstract issues of law" that appellate courts are better suited to consider. *Id.* at 317 (quotation marks omitted). Those questions, moreover, need only be answered once, since we are asked to consider whether *any* plaintiff may invoke California's anti-SLAPP rule following a consensual forum transfer—not whether this particular plaintiff actually warrants protection given the facts of this case. *See* note 11, *post*; *cf. Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 12 (1983) ("An order that amounts to a refusal to adjudicate the merits plainly presents an important issue separate from the merits."). In other words, the question presented in this case is whether the defendants get *one* proverbial "bite at the apple" through consideration of the motion in the lower court—not whether the defendants get a "second bite" through appellate review. *See, e.g., Weight Watchers of Phila., Inc. v. Weight Watchers Int'l, Inc.*, 455 F.2d 770, 773 (2d Cir. 1972) ("Another important factor bearing on the application of the *Cohen* doctrine . . . is whether a decision will settle

12

a point once and for all, as it did in the *Cohen* case, or will open the way for a flood of appeals concerning the propriety of a district court's ruling on the facts of a particular suit." (citation omitted)).[10] And the importance of considering that threshold inquiry is particularly notable in this case, where the policy interest at stake is one of substantial importance that cannot be effectively vindicated after final judgment. *See* Part A.iii., *post*.

The District Court's order also was completely separate from the merits of the plaintiff's cause of action. The Court denied Microflo's motion as a matter of law, ruling that the motion was predicated on a source of law that did not apply to the suit. The District Court therefore did not consider the underlying facts in the complaint, much less the "merits" of the malicious prosecution claim. Additionally, as we will see in Part B, *post*, the question whether California's anti-SLAPP rule applies in this diversity case does not depend on whether California substantive law governs the merits of Liberty's malicious prosecution claim. Accordingly, we are able to review the District Court's order with respect to the anti-SLAPP issue without addressing the District Court's decision that New York law governs the malicious prosecution claim, thereby avoiding the general rule that "one may not bring an interlocutory appeal of a district court's choice of law determination." *Gramercy Mills, Inc. v. Wolens*, 63 F.3d 569, 571 (7th Cir. 1995). For these reasons, the question raised

---

[10] The parties dispute whether a purported "fourth prong" of the collateral order doctrine requires that the appeal raise "serious and unsettled questions of law." *Banque Nordeurope S.A. v. Banker*, 970 F.2d 1129, 1131 (2d Cir. 1992) (citing *Cohen*, 337 U.S. at 547, and *Nixon v. Fitzgerald*, 457 U.S. 731, 743 (1982)). Our Circuit's approach to the collateral order doctrine, however, has simply copied the Supreme Court's formulation and not attempted to craft some additional element that the Supreme Court has not yet recognized. Accordingly, we use the formulation of the collateral order doctrine that the Supreme Court has consistently used for decades. *See, e.g.*, *Will*, 546 U.S. at 349; *see also Under Seal v. Under Seal*, 326 F.3d 479, 481 n.1 (4th Cir. 2003) (collecting dozens of cases using the three-prong test).

To be sure, the Supreme Court, in *Nixon*, noted, in *dictum*, that "*Cohen* established that a collateral appeal of an interlocutory order must 'presen[t] a serious and unsettled question.'" 457 U.S. at 742 (citing *Cohen*, 337 U.S. at 547). But after this *dictum* on *Cohen*, the Court immediately reverted to the familiar three-factor test, *see, e.g.*, *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 11, and it has used that test ever since without exception, *see Under Seal*, 326 F.3d at 481 n.1 (collecting cases). We follow the Supreme Court's lead. *See id.* at 481–84 (comprehensively reviewing the issue). "There is simply no requirement that the argument on appeal be novel." *Burlington N. & Santa Fe Ry. Co. v. Vaughn*, 509 F.3d 1085, 1091 (9th Cir. 2007); *cf.* 15A C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure § 3911.5 (2013).

in this appeal presents "an important issue completely separate from the merits of the action."[11] *Will*, 546 U.S. at 349 (quotation marks omitted).

### iii.

Finally, we conclude that the denial of a motion to dismiss pursuant to California's anti-SLAPP rule would "be effectively unreviewable on appeal from a final judgment." *Will*, 546 U.S. at 349 (quotation marks omitted). As explained in Part A.i., *ante*, the anti-SLAPP rule is designed to "protect the defendant from the burdens of trial." *Batzel*, 333 F.3d at 1025. Consequently, even if the defendants could obtain relief in a later appeal regarding some aspects of California's anti-SLAPP rule (under the fee-shifting provisions, for instance), the denial of pre-trial protections would be unreviewable on appeal from a final judgment of a district court.

By itself, however, the inability to review after final judgment the denial of pre-trial protections does *not* settle whether the third prong of the collateral order test is satisfied. As the Supreme Court explained in *Will*:

> Since only some orders denying an asserted right to avoid the burdens of trial qualify . . . as orders that cannot be reviewed "effectively" after a conventional final judgment, the cases have to be combed for some further characteristic that merits appealability under *Cohen*; and . . . that something further boils down to "a judgment about the value of the interests that would be lost through rigorous application of a final judgment requirement."

*Will*, 546 U.S. at 351–52 (quoting *Digital Equip.*, 511 U.S. at 878–79). Immediate review must further "some particular value of a high order . . . in support of the interest in avoiding trial." *Id.* at 352. "That is, it is not mere avoidance of a trial, but avoidance of a trial that would imperil a substantial

---

[11] Our decision is narrow in the sense that this appeal is "concerned only with the immediate appealability of an order that a state anti-SLAPP statute does not apply at all" to a federal diversity case where the suit is transferred to a federal court in another state and the cause of action is governed by that other state's law. *Godin v. Schencks*, 629 F.3d 79, 84 (1st Cir. 2010). The Ninth Circuit has also applied the collateral order doctrine to review the denial of a motion under California's anti-SLAPP rule based on the "merits" of the motion, as opposed to the inapplicability of the rule. *See Batzel*, 333 F.3d at 1024–26; *see also DC Comics v. Pac. Pictures Corp.*, 706 F.3d 1009, 1015 (9th Cir. 2013) (reaffirming the holding in *Batzel*). We need not address that issue here. *See, e.g., Godin*, 629 F.3d at 84 ("We defer to another day resolution of the question of whether an order addressed to the merits of a ruling under an anti-SLAPP statute is immediately appealable.").

public interest, that counts when asking whether an order is 'effectively' unreviewable if review is to be left until later." *Id.* at 353 (quoting *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 468 (1978)).

California enacted the anti-SLAPP rule to advance the substantial public interest in safeguarding constitutionally protected activities.[12] *See* Part A.i., *ante.* The State demonstrated the significance of this interest by providing for immediate appeals from the denial of anti-SLAPP motions in California courts. *See* CAL. CIV. PROC. CODE § 425.16(i).[13] In light of these compelling public interests, we agree with the Ninth Circuit that "[i]f the defendant were required to wait until final judgment to appeal the denial of a meritorious anti-SLAPP motion," an appellate reversal of a judgment "would not remedy the fact that the defendant had been compelled to defend against a meritless claim brought to chill rights of free expression." *Batzel*, 333 F.3d at 1025; *cf. Digital Equip.*, 511 U.S. at 879 ("When a policy is embodied in a constitutional or statutory provision entitling a party to immunity from suit (a rare form of protection), there is little room for the judiciary to gainsay its 'importance.'").

To be sure, we recognize that the particular *legal question* presented in this appeal—namely, whether the forum transfer made the anti-SLAPP rule inapplicable—could be reviewed following final judgment if Microflo moved for attorneys' fees. But the Supreme Court has clarified that, when the essence of a right is to shield certain defendants from the burdens of litigation, collateral review is not defeated by the opportunity for post-judgment review of the same legal question that

---

[12] The anti-SLAPP rule includes the following statement of purpose:
> The Legislature finds and declares that there has been a disturbing increase in lawsuits brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances. The Legislature finds and declares that it is in the public interest to encourage continued participation in matters of public significance, and that this participation should not be chilled through abuse of the judicial process. To this end, this section shall be construed broadly.

CAL. CIV. PROC. CODE § 425.16(a).

[13] That section provides: "An order granting or denying a special motion to strike shall be appealable under Section 904.1." CAL. CIV. PROC. CODE § 425.16(i). Section 904.1 provides, in relevant part: "An appeal, other than in a limited civil case, may be taken from any of the following: (1) From a judgment . . . [;] (13) From an order granting or denying a special motion to strike under Section 425.16." *Id.* § 904.1(a).

arose when considering the earlier order. *See, e.g.*, *Behrens v. Pelletier*, 516 U.S. 299, 308 (1996) ("[T]he defense is meant to give . . . a right, not merely to avoid standing trial, but also to avoid the burdens of such *pretrial* matters as discovery . . . . Whether or not a later summary judgment motion is granted, denial of a motion to dismiss is conclusive as to this right." (internal quotation marks omitted)). Accordingly, even though we could review the pertinent choice-of-law questions in a post-judgment appeal, that review would not be "effective" in vindicating the compelling public interest protected by the pre-trial aspects of California's anti-SLAPP rule.

For these reasons, we conclude that the denial of the pre-trial protections offered by the anti-SLAPP rule would be "effectively unreviewable" in a later appeal, and that interlocutory appeal is available under the collateral order doctrine.

**B.**

Having concluded that an interlocutory appeal is available, we now turn to the relevant choice-of-law principles in federal diversity cases. As interpreted by the Supreme Court, the Rules of Decision Act, 28 U.S.C. § 1652, *see* note 1, *ante*, provides that federal courts exercising diversity jurisdiction over a state-law claim must consider two conceptually distinct issues. First, a federal court exercising diversity jurisdiction must apply the choice-of-law rules of the state in which that court sits to determine the rules of decision that would apply if the suit were brought in state court. *See Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 494–97 (1941). Though constrained in some respects by the United States Constitution, this choice-of-law inquiry is an issue of *state* law. *See Sun Oil Co. v. Wortman*, 486 U.S. 717, 729–30 (1988). Second, after using state conflict-of-laws principles to ascertain the rules of decision that would apply in the state courts of the federal forum, federal courts apply those state rules of decision that are "substantive" under *Erie*, and are consistent with

16

federal law.[14]  *See id.* at 726–27; *see also Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427 (1996) ("Under the *Erie* doctrine, federal courts sitting in diversity apply state substantive law and federal procedural law.").

Whether a particular state rule of decision is "substantive" under *Erie* is a question of *federal* law, *see Sun Oil Co.*, 486 U.S. at 726–27; *Hanna v. Plumer*, 380 U.S. 460, 465–66 (1965), and is decided by examining

> whether application of the [State's] rule would make so important a difference to the character or result of the litigation that failure to enforce it would unfairly discriminate against citizens of the forum State, or whether application of the rule would have so important an effect upon the fortunes of one or both of the litigants that failure to enforce it would be likely to cause a plaintiff to choose the federal court.

*Gasperini*, 518 U.S. at 428 n.8 (quotation marks omitted).  This test looks not to the *labels* but to the *content* of state rules of decision.[15]  In other words, once a federal court decides that a state rule of decision would apply in an identical action in state court, it is "immaterial" whether that state rule of decision is labelled by *state law* as "procedural," "substantive," both, or neither.  *Guaranty Trust Co. v. York*, 326 U.S. 99, 109 (1945).

"Classification of a law as 'substantive' or 'procedural' for *Erie* purposes is sometimes a challenging endeavor," *Gasperini*, 518 U.S. at 427, but perhaps even more confounding is the fact that a state's "procedural" rules under its own choice-of-law principles can be "substantive" for purposes of *federal* diversity jurisdiction.  For instance, a state court considering whether to apply its own statutes of limitations to claims governed by the laws of other states, may apply its statutes of limitations as a "procedural" matter.  *See, e.g.*, *Sun Oil Co.*, 486 U.S. at 729.  A federal court, however,

---

[14] If a federal statute (or rule established under the Rules Enabling Act) displaces a state "substantive" rule, the Supreme Court has explained that the federal statute or rule "governs—[state] law notwithstanding—unless it exceeds statutory authorization or Congress's rulemaking power."  *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 130 S. Ct. 1431, 1437 (2010).

[15] Whether a state rule of decision is "substantive" in this sense is a legal inquiry independent of the facts of a particular case.  *See, e.g.*, *Gasperini*, 518 U.S. at 428 n.8 (asking whether "failure to enforce [the state law] would be likely to cause *a plaintiff* [not *the plaintiff*] to choose the federal court." (emphasis supplied; quotation marks omitted)).

17

may apply the same statute of limitations because it is "substantive" within the meaning of *Erie*. *See*

*Guaranty Trust Co.*, 326 U.S. at 109–10. As the Supreme Court has explained:

> *Guaranty Trust* itself rejects the notion that there is an equivalence between what is substantive under the *Erie* doctrine and what is substantive for purposes of conflict of laws. 326 U.S. at 108. Except at the extremes, the terms "substance" and "procedure" precisely describe very little except a dichotomy, and what they mean in a particular context is largely determined by the purposes for which the dichotomy is drawn. In the context of our *Erie* jurisprudence, . . . that purpose is to establish (within the limits of applicable federal law, including the prescribed Rules of Federal Procedure) substantial uniformity of predictable outcome between cases tried in a federal court and cases tried in the courts of the State in which the federal court sits. . . . . The purpose of the substance-procedure dichotomy in the context of the Full Faith and Credit Clause, by contrast, is not to establish uniformity but to delimit spheres of state legislative competence.

*Sun Oil Co.*, 486 U.S. at 726–27.

In sum, if state conflict-of-law principles call for a rule of decision (1) that would apply to

the suit if it were brought in state court, (2) that is "substantive" within the meaning if *Erie*, and

(3) that is not displaced by a valid federal law or rule governing the same issue, then the Rules of

Decision Act, *see* note 1, *ante*, requires the federal court sitting in diversity to apply the state rule,

irrespective of whether that rule is understood to be "procedural" or "substantive" as a matter of

state law. We address below the first of these issues, which is the only one contested by the parties.

*See generally Greenlaw v. United States*, 554 U.S. 237, 243 (2008) ("In our adversary system, in both civil

and criminal cases, in the first instance and on appeal, we follow the principle of party presentation.

That is, we rely on the parties to frame the issues for decision and assign to courts the role of neutral

arbiter of matters the parties present.").

As noted, a federal court exercising diversity jurisdiction generally must apply the choice-of-

law rules of the state in which the court sits. *Klaxon Co.*, 313 U.S. at 494–97. In this case, however,

Liberty originally filed suit in California, after which time the parties agreed to transfer the case to

the Eastern District of New York pursuant to 28 U.S.C. § 1404(a), *see* note 3, *ante*. The Supreme

Court has held that, in such circumstances, the governing law "does not change following a transfer

18

of venue under § 1404(a)," regardless of which party initiates the transfer. *Ferens*, 494 U.S. at 530. Here, that means that the federal court in New York must pretend, for the purpose of determining the applicable state rules of decision, that it is sitting in California.[16] Accordingly, the District Court was required to determine the rules of decision that a California state court would apply.[17] *See, e.g.*, *Phelps v. McClellan*, 30 F.3d 658, 663 (6th Cir. 1994) ("Because the federal court in Ohio would [as a procedural matter], under Ohio choice of law rules, apply the Ohio statute of limitations, so must the federal court in New York if the case was transferred there under section 1404(a)."); *Muldoon v. Tropitone Furniture Co.*, 1 F.3d 964, 966 (9th Cir. 1993) ("Because an Illinois state court would [as a procedural matter] have applied the Illinois statute of limitations, a federal district court in Illinois would have been bound to do likewise. As transferee court, the district court in California, in turn, should have applied the statute that the Illinois district court, the transferor court, would have been required to apply." (internal citations omitted)).

---

[16] For this reason, there is no merit to Liberty's argument that it makes no difference whether a *California state court* would apply the anti-SLAPP rule in this case because "the case is no longer pending in a California court and the New York District Court held that New York law governs Liberty's malicious prosecution claim." Appellee's Br. at 7. Although Liberty's argument makes intuitive sense, *see, e.g.*, *Ferens*, 494 U.S. at 538 (Scalia, J., dissenting) (noting the considerable "costs attending the necessity for transferee courts to figure out the choice-of-law rules (and probably the substantive law) of distant States"), it runs directly contrary to the Supreme Court's holding that the law governing a claim "does not change following a transfer of venue under § 1404(a)," regardless of which party initiates the transfer, *id.* at 531. Accordingly, rather than applying the rules of decision that would apply in a New York court, as it most often does in diversity cases, the Eastern District of New York must use those rules of decision that would apply in a California state court.

Similarly, Microflo's argument that "New York has no interest in not applying California's Anti-SLAPP statute in this litigation," Appellants' Brief at 13, is inapposite, because New York's interests would not influence a California court's decision to apply California's anti-SLAPP rule as a procedural matter. It is true that "the transferee court must follow the *choice-of-law rules* that prevailed in the transferor court," *Ferens*, 494 U.S. at 519 (emphasis supplied), but the transferee court must conduct this inquiry as if the case was still being litigated in the transferor court, thereby ensuring that "[a] transfer under § 1404(a) . . . does not change the law applicable to a diversity case," *id.* at 523. Here, for example, the District Court should have assessed what a California court would do in a case heard in *its own court*—not what California's choice-of-law rules might prescribe for suits being litigated in a federal court in New York. As the Supreme Court held in *Van Dusen v. Barrack*, 376 U.S. 612 (1964), "the transferee district court must . . . apply the state law that *would have been applied if there had been no change of venue*." *Id.* at 639 (emphasis supplied); *see also Ferens*, 494 U.S. at 519 (extending the holding of *Van Dusen* to transfers initiated by a plaintiff rather than a defendant).

[17] We note that federal courts in this Circuit, including the Court of Appeals, are bound by *our* interpretations of federal law, even when a case is transferred from a district court in another circuit. *See Desiano v. Warner-Lambert & Co.*, 467 F.3d 85, 90–91 (2d Cir. 2006).

We have no reason to doubt that a California state court would apply California's anti-SLAPP rule as a matter of its own procedural rules, even if it applied New York substantive law to the merits of the malicious prosecution action. The anti-SLAPP rule, which appears in California's Code of Civil Procedure, and which California courts have described as a "procedural remedy," *Rusheen v. Cohen*, 37 Cal. 4th 1048, 1055 (2006), and a "mere rule of procedure," *Ludwig v. Superior Court*, 37 Cal. App. 4th 8, 21 (1995), states that it is intended to avoid the "abuse of the judicial process" in the form of "lawsuits brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances," CAL. CIV. PROC. CODE § 425.16(a). To this end, the rule provides for expeditious dismissal and an award of attorney's fees and costs for any meritless "cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue . . . ." *Id.* § 425.16(b)(1); *see also id.* § 425.16(c)(1).[18] The text of the rule is not limited to causes of action that arise under California law, and we perceive no reason to construe it that way.

Indeed, California courts have repeatedly held, as a matter of *state* law, that California's anti-SLAPP rule is "procedural" in nature and therefore applies in California courts regardless of which source of law governs a plaintiff's claim. *See, e.g.*, *Bradbury v. Superior Court*, 49 Cal. App. 4th 1108, 1118 (1996) ("Where the action is founded on a federal statute and brought in state court, state procedure controls unless the federal statute provides otherwise. The Legislature, in enacting section 425.16, recognized that all kinds of claims could achieve the objective of a SLAPP suit." (internal citations and quotation marks omitted)); *Vergos v. McNeal*, 146 Cal. App. 4th 1387, 1392 n.4 (2007) ("Federal civil rights claims brought in California state courts are subject to section 425.16 motions."). Moreover, even if California state law required a "substantive" choice-of-law analysis

---

[18] As relevant here, § 425.16(c)(1) provides that "a prevailing defendant on a special motion to strike shall be entitled to recover his or her attorney's fees and costs." CAL. CIV. PROC. CODE § 425.16(c)(1).

using California's "governmental interest analysis" approach, *Sullivan v. Oracle Corp.*, 51 Cal. 4th 1191, 1202 (2011), the anti-SLAPP rule would still apply. As one California appellate court recently explained in a case where Virginia law governed the cause of action and the plaintiff, on that basis, argued that the anti-SLAPP rule was inapplicable:

> [O]ne of the purposes of the [California anti-SLAPP] statute is to ensure that California courts, and the state's judicial processes as a whole, are not used as a means of interfering with the valid exercise of the right of free speech or the right of petition. Because Alison filed her complaint in a California court, this state has an interest in applying the procedures described in section 425.16 to ensure that her claims have sufficient merit to justify the potential restraints it places on Respondents' right to exercise their right to speak freely to police. . . .

> In effect, Alison argues that Virginia has an interest in having its citizens, who are the defendants in this case, receive fewer procedural protections than they would receive in Virginia courts. Alison fails to explain how Virginia's interests are impaired by such an outcome and we find no merit in her argument. Moreover, we can conceive of no possible interest that Virginia might have in whether California applies a procedural mechanism that is intended to ensure [that] its own courts are not used to restrain the exercise of the right of petition or the right of free speech.

*McDaniel v. McDaniel*, No. B226832, 2011 WL 4940687, at *7–8 (Cal. Ct. App. Oct. 18, 2011) (unpublished). It is unclear to us that this type of conflicts analysis was even necessary under California law, given the procedural nature of the anti-SLAPP rule, *cf. County of Los Angeles v. Superior Court*, 139 Cal. App. 4th 8, 17 (2006) ("Although federal law controls the substantive aspects of plaintiffs' federal civil rights claim, state rules of evidence and procedure apply unless [the] application of those rules would affect plaintiffs' substantive federal rights."), but we have no doubt that other California courts would reach the same conclusion were they to apply California's "substantive" choice-of-law principles.

To be sure, the Due Process Clause and the Full Faith and Credit Clause, among other constitutional provisions, provide *some* limitations to the application of state conflict-of-law rules in ways that would frustrate causes of action defined by other states' laws, but this case does not

21

approach those constitutional boundaries.[19]  Indeed, "[n]o one disputes the general and unassailable

proposition . . . that States may establish the rules of procedure governing litigation in their own

courts," *Felder v. Casey*, 487 U.S. 131, 138 (1988), and it is common for procedural rules to have

substantive implications, *see, e.g.*, *Shady Grove*, 130 S. Ct. at 1442 (plurality opinion); *id.* at 1450

(Stevens, J., concurring); *see also Sun Oil Co.*, 486 U.S. at 722 ("Since the procedural rules of its courts

are surely matters on which a State is competent to legislate, it follows that a State may apply its own

procedural rules to actions litigated in its courts.").

In sum, California's anti-SLAPP rule would apply to this suit if the claim were proceeding in

a California state court.  Because the District Court erred with respect to this issue, we vacate the

District Court's order and remand for its further consideration of the motion.

---

[19] As a general matter, the substantive immunities and defenses available against a particular cause of action are governed by the same source of law that provides the cause of action.  *See, e.g.*, *Howlett v. Rose*, 496 U.S. 356, 375 (1990) ("The elements of, and the defenses to, a federal cause of action are defined by federal law."); *Ferri v. Ackerman*, 444 U.S. 193, 198 (1979) ("[W]hen state law creates a cause of action, the State is free to define the defenses to that claim, including the defense of immunity, unless, of course, the state rule is in conflict with federal law.").  At one point, the Supreme Court seemed to give this principle constitutional status.  *See Tenn. Coal, Iron & R.R. Co. v. George*, 233 U.S. 354, 360 (1914) ("The courts of the sister State trying the case would be bound to give full faith and credit to all those substantial provisions of the statute which inhered in the cause of action . . . .").  However, "[t]he conflicts law embodied in the Full Faith and Credit Clause allows room for common-law development," *Sun Oil Co.*, 486 U.S. at 723 n.1, and we have held *en banc* that when a state court recognizes a claim arising from another state's law, the other state's law need not "control every incident of the claim," and the forum state may "qualif[y] the rights and obligations to which the statutory cause of action gives birth," *Pearson v. Ne. Airlines, Inc.*, 309 F.2d 553, 557–58 (2d Cir. 1962) (*en banc*).  *But see id.* at 565 (Friendly, J., dissenting) ("The Full Faith and Credit Clause insures that, in making its choice, the legislature creating the claim need not have to weigh the risk that the courts of sister states looking to its 'public acts' as a source of rights will disregard substantial conditions which it has imposed . . . .").  The Supreme Court has declined to endorse our interpretation of the Full Faith and Credit Clause, *see Van Dusen v. Barrack*, 376 U.S. 612, 629 n.24 ("intimat[ing] no view" regarding our *Pearson* holding), but the Court has been markedly reluctant to interpret that Clause as overriding a forum state's conflict-of-law rules, *see, e.g.*, *Franchise Tax Bd. v. Hyatt*, 538 U.S. 488, 498 (2003) (declining "to embark on a course of balancing States' competing sovereign interests to resolve conflicts of laws under the Full Faith and Credit Clause"); *cf. Sun Oil Co.*, 486 U.S. at 739 (Brennan, J., concurring) (identifying a constitutional concern under the Full Faith and Credit Clause if a forum state were to "adjudicat[e] out-of-state claims under the forum's own law on [substantive issues]," and criticising the majority for its "conclusory" assertion that "remedies, burdens of proof, and burdens of production" are not substantive in this sense).  *See generally* Caleb Nelson, *Originalism and Interpretive Conventions*, 70 U. CHI. L. REV. 519, 593–97 (2003) (discussing interpretations of the Full Faith and Credit Clause).  But even if constitutional limitations on state choice-of-law rules were more tightly construed, the anti-SLAPP rule at issue here does not alter a defendant's liability, but rather, provides for the expedited dismissal of certain meritless disputes.

## CONCLUSION

To summarize, we hold that:

1.  Jurisdiction over this interlocutory appeal exists under the "collateral order" doctrine, because the District Court rejected Microflo's motion to dismiss under California's anti-SLAPP rule by conclusively determining a disputed issue on an important question of law that is "completely separate from the merits of the action," and because that decision would be effectively unreviewable on appeal from a final judgment. *Will*, 546 U.S. at 349. In particular, the essence of the protection afforded by California's anti-SLAPP rule—though not a form of immunity—is to protect certain defendants against the burdens of litigation. We also are able to review the District Court's decision, regarding whether California's anti-SLAPP rule can apply to this diversity suit, without considering the District Court's determination that New York substantive law governs the merits of Liberty's malicious prosecution claim.

2.  The District Court erred by conflating the relevant *state* choice-of-law question with the separate *federal* choice-of-law question under the *Erie* doctrine. State rules that are "procedural" under state choice-of-law principles may be applicable in federal diversity suits if those rules are "substantive" within the meaning of *Erie* and are consistent with federal law. *See Sun Oil Co.*, 486 U.S. at 726–27.

3.  California's anti-SLAPP rule would apply in a California state court as a procedural matter, regardless of which state's substantive rule of decision the California court would apply in the action. Accordingly, the District Court erred in its choice-of-law analysis by concluding that California's anti-SLAPP rule could not apply following the forum transfer because New York law governed the plaintiff's cause of action.

For these reasons, Liberty's motion to dismiss this appeal for lack of appellate jurisdiction is **DENIED**; the order of the District Court denying Microflo's motion to dismiss under California's anti-SLAPP rule is **VACATED**; and the cause is **REMANDED** to the District Court for its further consideration of the motion to dismiss, and for such further proceedings, consistent with this opinion, as may be appropriate in the circumstances.