14-2556
Fischer v. New York State Department of Law

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

- - - - - -

August Term, 2014

(Motion Submitted:  May 26, 2015          Decided:  February 5, 2016)

Docket No. 14-2556

_____

CAROL FISCHER,

Plaintiff-Appellee,

- v. -

NEW YORK STATE DEPARTMENT OF LAW, the Office of the Attorney General of the State of New York, a division of the New York State Department of Law,

Defendant-Appellant.

_____

Before:  KEARSE, POOLER, and LIVINGSTON, Circuit Judges.

Motion to dismiss an appeal from an order of the United States District Court for the Southern District of New York, Andrew L. Carter, Jr., Judge, denying the motion of defendant New York State Department of Law pursuant to the Government Employee Rights Act of 1991 ("GERA"), 42 U.S.C. §§ 2000e-16a, 2000e-16b, and 2000e-16c, to dismiss plaintiff's disability discrimination claim under the Rehabilitation Act of 1973, 29 U.S.C. § 701 et seq., for lack of subject matter jurisdiction.  Defendant argued that GERA requires that such a claim by a plaintiff who was employed at a policymaking level be brought in an administrative agency, not in the district court, see 42 U.S.C.

§ 2000e-16c(b). The district court denied this motion, ruling that plaintiff's position was not on a policymaking level. Defendant contends that an immediate appeal of the denial of its GERA-based motion is permitted under the collateral order doctrine. We disagree and grant plaintiff's motion to dismiss the appeal for lack of appellate jurisdiction.

PEDOWITZ & MEISTER, New York, New York (Robert A. Meister, Marisa H. Warren, New York, New York, of counsel), for Plaintiff-Appellee.

ERIC T. SCHNEIDERMAN, Attorney General of the State of New York, New York, New York (Barbara D. Underwood, Solicitor General, Anisha Dasgupta, Deputy Solicitor General, Andrew Kent, Senior Counsel to the Solicitor General, New York, New York, of counsel), for Defendant-Appellant.

KEARSE, Circuit Judge:

Plaintiff-appellee Carol Fischer is pursuing in the United States District Court for the Southern District of New York a claim against defendant-appellant, her former employer--whose proper name is the Division of Appeals and Opinions of the Office of the Attorney General of the State of New York ("OAG")--alleging discrimination in violation of § 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 701 et seq. ("Rehabilitation Act" or the "Act"). OAG moved to dismiss the complaint for lack of subject matter jurisdiction, arguing that Fischer was employed by OAG at a policymaking level and thus was subject to the Government Employee Rights Act of 1991 ("GERA"), 42 U.S.C. §§ 2000e-16a, 2000e-16b, and 2000e-16c, which required her to pursue her claim initially through administrative agencies, with a right of review in a federal court of appeals, rather than initiating suit in the district court, see id. §§ 2000e-16c(b) and (c). The district court, Andrew L. Carter, Jr., Judge, denied the motion to dismiss, ruling that GERA did not apply because the record

indicated that Fischer's position was not on a policymaking level. OAG has appealed from that decision, and Fischer, noting that there has been no final judgment, moves to dismiss the appeal for lack of appellate jurisdiction. OAG opposes the motion, citing the collateral order doctrine. For the reasons that follow, we conclude that the denial of OAG's motion to dismiss pursuant to GERA does not qualify as an immediately appealable order under that doctrine, and we grant the motion to dismiss the appeal.

## I. BACKGROUND

Some of the facts, as revealed by responsive pleadings and statements pursuant to Rule 56.1 of the Local Rules for the Southern District submitted by the parties in connection with a motion by OAG for summary judgment, are not in dispute. It is undisputed that for more than a decade, beginning in November 1999, Fischer, an attorney, was employed as an Assistant Solicitor General (or "ASG") in OAG's Division of Appeals and Opinions, and that at all relevant times, OAG was an entity that was receiving federal financial assistance and hence was forbidden to discriminate in employment decisions on the basis of physical disability. In 2003, Fischer was counseled about her attendance and her failure to submit briefs to OAG reviewers sufficiently in advance. She informed her supervisors that she had a disability--a condition known as Chronic Fatigue Syndrome--that was interfering with her work; her supervisors recommended that she seek an accommodation.

Fischer's initial request for accommodation was to work at home "if and when [her] illness so require[d]"; that request was denied as unreasonable in light of her documented attendance and work-performance deficiencies. The parties thereafter agreed on an accommodation by which

Fischer would be allowed to work at home for up to three days a month. The accommodation was originally for a three-month period but was repeatedly renewed during the next seven years. In the Spring of 2011, OAG terminated Fischer's employment.

A. The First Two Years of the Present Litigation

Fischer commenced the present action against OAG in 2012, asserting claims under the Rehabilitation Act and state law. The Complaint alleges, to the extent pertinent to this appeal (the state-law claim having been dismissed by the district court), that Fischer was able to "perform the essential functions of her job . . . with an accommodation that would permit her to work from home for several days a month," and that, with that accommodation over a period of some seven years beginning in 2003, she "performed her role as an Assistant Attorney [sic] General" (Complaint ¶¶ 11, 16) and performed it well (see id. ¶¶ 16-17). Fischer alleges that when she requested a further extension of the accommodation in October 2010, OAG did not grant it and never responded or communicated with her about her request. (See Complaint ¶¶ 18-21.) She alleges that the lack of continued accommodation, together with an increased workload, caused her condition to deteriorate, and in March 2011 she went on an unpaid medical leave; while she was on that leave, OAG terminated her employment. Fischer alleges that OAG failed to reasonably accommodate her disability and terminated her employment because of her disability, in violation of § 504 of the Rehabilitation Act.

OAG filed an answer admitting (a) the fact and duration of Fischer's employment, (b) OAG's accommodation of her disability by allowing her to work several days a month at home, and (c) OAG's termination of her employment in the Spring of 2011. OAG denied, inter alia, that it had

4

denied the October 2010 accommodation request (see OAG Answer ¶¶ 19-21) and that Fischer had performed her job adequately (see, e.g., id. ¶¶ 16-17). It alleged that she had in fact been informed that her October 2010 accommodation request was granted (see id. ¶ 22); and it "affirmatively allege[d] that, as noted in counseling memoranda, evaluations, and other documents, there were instances where plaintiff defaulted in filing appellate briefs and otherwise failed to follow office policy, including regarding supervisory review of briefs" (id. ¶ 11).

Following nearly a year of discovery, OAG moved for summary judgment dismissing Fischer's claims. It contended that her Rehabilitation Act claim should be dismissed because OAG had provided Fischer with a reasonable accommodation after being informed of her disability and that she was unable to perform the essential functions of her job even with the accommodation. In support of the latter contention, OAG pointed to litigations in which Fischer had failed to file timely briefs to the courts and had failed to submit her briefs to reviewers in a timely and reliable manner. In opposition, Fischer pointed to personnel evaluations in 2004-2009 that rated her "diligent" and "highly effective." The district court denied OAG's motion for summary judgment dismissing the Rehabilitation Act claim, concluding that there were genuine issues of fact as to whether accommodation had been granted in 2010 and whether, with a reasonable accommodation, Fischer could perform the essential functions of an Assistant Solicitor General.

Some two months later, OAG invoked GERA in order to seek dismissal of the Rehabilitation Act claim for lack of subject matter jurisdiction.

B. OAG's GERA Motion

GERA, whose legislative antecedents are discussed in Part II below, is designed to

"provide procedures to protect the rights of certain government employees, with respect to their public employment, to be free of discrimination on the basis of race, color, religion, sex, national origin, age, or disability." 42 U.S.C. § 2000e-16a(b) (emphases added); see id. § 2000e-16b(a) (citing relevant sections of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII"), the Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq. ("ADEA"), the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq. ("ADA"), and the Rehabilitation Act). GERA applies to

> any individual chosen or appointed, by a person elected to public office in any State or political subdivision of any State by the qualified voters thereof--

> > (1) to be a member of the elected official's personal staff;

> > (2) to serve the elected official on the policymaking level; or

> > (3) to serve the elected official as an immediate advisor with respect to the exercise of the constitutional or legal powers of the office.

42 U.S.C. § 2000e-16c(a). GERA allows these individuals to enforce their rights to be free from employment discrimination on any of the above bases by filing a complaint with the Equal Employment Opportunity Commission ("EEOC" or "Commission"), see id. § 2000e-16c(b)(1), or with an appropriate State or local administrative agency, which may attempt "to remedy the practice alleged" within a limited time before the Commission takes action, id. § 2000e-5(d); see also id. § 2000e-16c(b).

Fischer had been appointed by New York State's Attorney General, an elected official. OAG asserted that as an Assistant Solicitor General who made recommendations as to what courses of action should be pursued, determined various positions to be taken in an appeal, and drafted opinions that were issued to State agencies and local governments, Fischer was employed in a policymaking position. It argued that in order to complain of employment discrimination in violation

6

of the Rehabilitation Act, Fischer was thus required, under GERA, to pursue that claim in an administrative proceeding and that the district court lacks jurisdiction to entertain it.

In a Memorandum & Order dated June 20, 2014, the district court denied the motion, concluding that Fischer could not properly be considered a policymaker. The record indicated that there were numerous ASGs working for OAG in the Division of Appeals and Opinions and that there were at least two levels of management between ASG Fischer and the Attorney General: Fischer reported to a Deputy Solicitor General, who served under the Solicitor General, who, in turn, was appointed by the Attorney General. Fischer herself had no supervisory or management authority. A policy question would normally be directed by the Attorney General to the Solicitor General; an ASG would receive an assignment to research or write on such an issue from the Solicitor General; and if an ASG were called on to make a presentation on the issue to the Attorney General, the ASG would be accompanied by the Solicitor General or another supervisor. Further, an ASG's briefs and opinions were reviewed by the Solicitor General or at least one Deputy Solicitor General. Given this record, the district court rejected OAG's premise that Fischer was employed at a policymaking level, and hence rejected OAG's conclusion that GERA required that her Rehabilitation Act claim be filed with the EEOC and deprived the district court of subject matter jurisdiction.

OAG has appealed from the denial of that motion to dismiss. OAG also asked the district court to certify its order for interlocutory review under 28 U.S.C. § 1292(b), a request that has been denied. Fischer has moved to dismiss the appeal for lack of appellate jurisdiction.

OAG opposes the motion to dismiss its appeal, contending that denial of its GERA-based motion to dismiss is immediately appealable under the collateral order doctrine. For the reasons that follow, we disagree.

7

DISCUSSION

Section 1291 of 28 U.S.C. gives courts of appeals jurisdiction over "final decisions" of the district courts. "In § 1291 Congress has expressed a preference that some erroneous trial court rulings go uncorrected until the appeal of a final judgment, rather than having litigation punctuated by 'piecemeal appellate review of trial court decisions which do not terminate the litigation.' United States v. Hollywood Motor Car Co., 458 U.S. 263, 265 (1982)." Richardson-Merrell Inc. v. Koller, 472 U.S. 424, 430 (1985). "The collateral order doctrine, identified with Cohen v. Beneficial Industrial Loan Corp., 337 U.S. 541 (1949), is 'best understood not as an exception to the "final decision" rule laid down by Congress in § 1291, but as a "practical construction" of it.'" Will v. Hallock, 546 U.S. 345, 349 (2006) (quoting Digital Equipment Corp. v. Desktop Direct, Inc., 511 U.S. 863, 867 (1994) ("Digital Equipment") (quoting Cohen, 337 U.S. at 546)). The "doctrine accommodates a small class of" interlocutory rulings that "are 'too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated.'" Will, 546 U.S. at 349 (quoting Cohen, 337 U.S. at 546 (other internal quotation marks omitted)).

> The requirements for appeal under the collateral order doctrine have been distilled down to three conditions: that an order "'[1] conclusively determine the disputed question, [2] resolve an important issue completely separate from the merits of the action, and [3] be effectively unreviewable on appeal from a final judgment.'"

Will, 546 U.S. at 349 (quoting Puerto Rico Aqueduct & Sewer Authority v. Metcalf & Eddy, Inc., 506 U.S. 139, 144 (1993) ("Puerto Rico Aqueduct") (quoting Coopers & Lybrand v. Livesay, 437 U.S. 463, 468 (1978))).

> The conditions are "stringent," Digital Equipment, supra, at 868 (citing Midland Asphalt Corp. v. United States, 489 U.S. 794, 799 (1989)), and unless they are kept so, the underlying doctrine will overpower the substantial finality interests § 1291 is meant to further: judicial efficiency, for example, and the "sensible policy 'of avoid[ing] the obstruction to just claims that would come from permitting the harassment and cost of a succession of separate appeals from the various rulings to which a litigation may give rise.'" Firestone Tire & Rubber Co. v. Risjord, 449 U.S. 368, 374 (1981) (quoting Cobbledick v. United States, 309 U.S. 323, 325 (1940)).

Will, 546 U.S. at 349-50; see also id. at 350 ("[W]e have not mentioned applying the collateral order doctrine recently without emphasizing its modest scope.").

All three of the requirements for appeal under the collateral order doctrine must be met; if any one is unsatisfied, the order is not immediately appealable under this doctrine. See, e.g., Lauro Lines S.R.L. v. Chasser, 490 U.S. 495, 498 (1989) ("Lauro Lines") (where the order in question "fail[s] to satisfy the third requirement of the collateral order test," "we need not decide whether [the] order . . . conclusively determines a disputed issue, or whether it resolves an important issue that is independent of the merits of the action"); Mohawk Industries, Inc. v. Carpenter, 558 U.S. 100, 108 (2009) (where "collateral order appeals are not necessary to ensure effective review . . . , we do not decide whether the other Cohen requirements are met"). Where review from a final judgment will be adequate, the fact

> [t]hat a ruling "may burden litigants in ways that are only imperfectly reparable by appellate reversal of a final district court judgment . . . has never sufficed." [Digital Equipment, 511 U.S.] at 872. Instead, the decisive consideration is whether delaying review until the entry of final judgment "would imperil a substantial public interest" or "some particular value of a high order." Will, 546 U.S., at 352-353.

Mohawk Industries, 558 U.S. at 107 (emphasis ours).

"[A]lthough the Court has been asked many times to expand the 'small class' of collaterally appealable orders, [it has] instead kept [the class] narrow and selective in its membership."

9

Will, 546 U.S. at 350.  The doctrine has been held applicable most often to motions asserting--as a matter of law--"an immunity from suit," not "a mere defense to liability," Mitchell v. Forsyth, 472 U.S. 511, 526 (1985) (emphasis in original):

> On the immediately appealable side are orders rejecting absolute immunity, Nixon v. Fitzgerald, 457 U.S. 731, 742 (1982), and qualified immunity, Mitchell v. Forsyth, 472 U.S. 511, 530 (1985).  A State has the benefit of the doctrine to appeal a decision denying its claim to Eleventh Amendment immunity, Puerto Rico Aqueduct, supra, at 144-145, and a criminal defendant may collaterally appeal an adverse ruling on a defense of double jeopardy, Abney v. United States, 431 U.S. 651, 660 (1977).

Will, 546 U.S. at 350 (emphases added); see Puerto Rico Aqueduct, 506 U.S. at 146 (the "object and purpose of the 11th Amendment were to prevent the indignity of subjecting a State to the coercive process of judicial tribunals at the instance of private parties" (internal quotation marks omitted)); see also Weltover, Inc. v. Republic of Argentina, 941 F.2d 145, 147-49 (2d Cir. 1991) (order denying foreign nation's motion to dismiss for lack of subject matter jurisdiction, applying Foreign Sovereign Immunities Act ("FSIA") immunity-stripping provision with regard to commercial activity having a direct effect in the United States, see 28 U.S.C. § 1605(a)(2), is immediately appealable), aff'd, 504 U.S. 607 (1992); Blue Ridge Investments, L.L.C. v. Republic of Argentina, 735 F.3d 72, 75-76 (2d Cir. 2013) ("Blue Ridge") (same with regard to application of FSIA provision for, inter alia, implied waiver of sovereign immunity, see 28 U.S.C. § 1605(a)(1)); Osborn v. Haley, 549 U.S. 225, 238 (2007) (orders rejecting federal jurisdiction and substitution of the United States as a defendant pursuant to Westfall Act, 28 U.S.C. §§ 2679(b)(1) and (d)--"a measure designed to immunize covered federal employees not simply from liability, but from suit"--are immediately appealable "[u]nder the collateral order doctrine"); cf. Helstoski v. Meanor, 442 U.S. 500, 505-08 (1979) (affirming denial of mandamus petition that challenged rejection of Congressman's motion to dismiss on the ground of

absolute immunity under the Constitution's Speech and Debate Clause, see U.S. Const. art. I, § 6, cl. 1, because the rejection could have been immediately appealed under the collateral order doctrine).

> In each case, some particular value of a high order was marshaled in support of the interest in avoiding trial: honoring the separation of powers, preserving the efficiency of government and the initiative of its officials, respecting a State's dignitary interests, and mitigating the government's advantage over the individual. That is, it is not mere avoidance of a trial, but avoidance of a trial that would imperil a substantial public interest, that counts when asking whether an order is "effectively" unreviewable if review is to be left until later. Coopers & Lybrand, 437 U.S., at 468 (internal quotation marks omitted).

Will, 546 U.S. at 352-53.

The collateral order doctrine has also been held to permit immediate appeal of the denial of certain other rights that would be irretrievably lost if not immediately corrected. See, e.g., Sell v. United States, 539 U.S. 166, 176-77 (2003) (order compelling involuntary medical treatment of mentally ill criminal defendant); Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 166, 171-72 (1974) (order imposing on defendants 90% of the expense of notice to the approximately 6,000,000 prospective members of the plaintiff class); Cohen, 337 U.S. at 546 (order denying motion under state law requiring a bond for expenses before stockholder is permitted to prosecute a derivative action); Moses H. Cone Memorial Hospital v. Mercury Construction Corp., 460 U.S. 1, 10-12 (1983) (order staying federal diversity suit pending completion of state-court declaratory judgment action, "amount[ing] to a refusal to adjudicate" the case in federal court and a "dismissal" that would be "entirely unreviewable," as the district court would be bound by principles of res judicata to honor the state-court judgment); Quackenbush v. Allstate Insurance Co., 517 U.S. 706, 714-15 (1996) (order granting abstention-based remand to state court that was "functionally indistinguishable from the stay order [the Supreme Court] found appealable in Moses H. Cone"); cf. Stack v. Boyle, 342 U.S. 1, 6

11

(1951) (ordering vacatur of denial of habeas petition that sought lower bail, ruling that the proper procedure for challenging the denial of a bail reduction motion is an immediate appeal under the Cohen doctrine); Roberts v. United States District Court, 339 U.S. 844, 845 (1950) (denying motion in Supreme Court for leave to file a petition for mandamus to challenge district court's order denying an application to proceed in forma pauperis, ruling, inter alia, that that order was immediately appealable to the court of appeals under the Cohen doctrine).

In contrast, most kinds of interlocutory decisions have been ruled not sufficiently important to warrant further inroads into § 1291's final judgment rule. See, e.g., Mohawk Industries, 558 U.S. at 114 ("disclosure orders adverse to the attorney-client privilege"); Van Cauwenberghe v. Biard, 486 U.S. 517, 527 (1988) (order denying motion to dismiss for lack of personal jurisdiction based on limitations in federal statute and treaty); Flanagan v. United States, 465 U.S. 259, 269 (1984) (order granting motion to disqualify criminal defense counsel); United States v. MacDonald, 435 U.S. 850, 861 (1978) (order denying motion to dismiss on ground of Sixth Amendment right to speedy trial); Di Bella v. United States, 369 U.S. 121, 131 (1962) (order denying motion to suppress evidence).

> "Allowing immediate appeals to vindicate every such right would move § 1291 aside for claims that the district court lacks personal jurisdiction, that the statute of limitations has run, that the movant has been denied his Sixth Amendment right to a speedy trial, that an action is barred on claim preclusion principles, that no material fact is in dispute and the moving party is entitled to judgment as a matter of law, or merely that the complaint fails to state a claim. Such motions can be made in virtually every case."

Will, 546 U.S. at 351 (quoting Digital Equipment, 511 U.S. at 873 (emphases ours)).

Of most pertinence to the present case, the collateral order doctrine has been held not applicable to permit immediate appeal of decisions denying motions to dismiss on the ground that the

12

plaintiffs' claims should be adjudicated in a different forum.  See, e.g., Lauro Lines, 490 U.S. at 496 (denial of motion to dismiss on the basis of a contractual forum-selection clause); Van Cauwenberghe, 486 U.S. at 527 (denial of motion to dismiss on the ground of forum non conveniens, relying on the second prong of Cohen, noting that the question of the convenience of the forum was not completely separate from the merits of the action); Carlenstolpe v. Merck & Co., 819 F.2d 33, 35-37 (2d Cir. 1987) (same, but relying on both the second and third prongs of Cohen, and noting that a different forum "does not save [the defendant] from a trial altogether"); RRI Realty Corp. v. Incorporated Village of Southampton, 766 F.2d 63, 65 (2d Cir. 1985) (denial of motion to dismiss on the ground of abstention); United States Tour Operators Association v. Trans World Airlines, Inc., 556 F.2d 126, 128 (2d Cir. 1977) (denial of motion to dismiss on the ground "that the Civil Aeronautics Board (CAB) had primary jurisdiction over plaintiffs' complaint").

In Lauro Lines, the Supreme Court concluded that the denial of a motion to enforce a contractual forum selection clause does not qualify for immediate appeal because it is "adequately"-- even if "not perfectly"--reviewable after final judgment.  490 U.S. at 501.  The Court stated that

> [i]f it is eventually decided that the District Court erred in allowing trial in this case to take place in New York, petitioner will have been put to unnecessary trouble and expense, and the value of its contractual right to an Italian forum will have been diminished.  It is always true, however, that "there is value . . . in triumphing before trial, rather than after it," MacDonald, supra, at 860, n. 7, and this Court has declined to find the costs associated with unnecessary litigation to be enough to warrant allowing the immediate appeal of a pretrial order, see Richardson-Merrell Inc., [472 U.S.] at 436 ("[T]he possibility that a ruling may be erroneous and may impose additional litigation expense is not sufficient to set aside the finality requirement imposed by Congress" in § 1291).

Lauro Lines, 490 U.S. at 499 (emphases added).  See also Digital Equipment, 511 U.S. at 874-75 (given the adequacy of an appeal from the final judgment, the collateral order doctrine does not apply

13

to the denial of a motion to enforce a "right to limit trial to [a particular] forum" (discussing Lauro Lines)); Lauro Lines, 490 U.S. at 502-03 (Scalia, J., concurring) (an appeal from the final judgment "is vindication enough because the right" to a preferred forum "is not sufficiently important to overcome the policies militating against interlocutory appeals. We have made that judgment when the right not to be tried in a particular court has been created through jurisdictional limitations established by Congress or by international treaty, see Van Cauwenberghe").

In light of these authorities, we need not decide whether the first two conditions for appealability under the collateral order doctrine are met, because we conclude that the third is not: The order rejecting OAG's contention--that Fischer's claim can be pursued only by commencement of an administrative proceeding--can be effectively reviewed on appeal from a final judgment.

OAG contends to the contrary, pointing to the immediate appealability of "[d]istrict court decisions denying absolute or qualified immunity to a sued government official" (OAG memorandum in opposition to motion to dismiss appeal ("OAG Mem.") at 16-17 (citing Nixon, Osborn, and Mitchell)), or refusing to recognize the "sovereign immunity" of States and foreign nations (OAG Mem. at 17 (citing Puerto Rico Aqueduct and Blue Ridge)). It argues that Fischer's court suit impinges on OAG's "dignitary" interests (OAG Mem. at 10 (internal quotation marks omitted)); that its claim that GERA deprives the district court of jurisdiction over Fischer's suit "is similar to a claim that a government officer is entitled to qualified immunity, or that a State government is entitled to Eleventh Amendment immunity" (id. at 16); that "Congress's decision to protect government employers from suits of this kind in federal district court is directly analogous to the immunity of governments and their officials under the doctrines of absolute or qualified immunity, state or foreign state sovereign immunity, and Westfall Act immunity" (id. at 18); and that "[t]he

14

reasons for allowing an interlocutory appeal in all these circumstances are the same" (id.). OAG states that there can be no adequate review from the final judgment when, as here, "Congress has directed that a defendant may not be sued at all[] or in a particular forum" (id. at 16 (emphasis added)). We disagree.

First, although OAG would have us equate a direction that there be no suit "at all" with a direction that suit be brought "in a particular forum," the Supreme Court has expressly placed these constraints on opposite sides of the line between those issues that are immediately appealable under the collateral order doctrine and those that are not. In discussing its decision in Lauro Lines, which confirmed the lack of immediate appealability of an order denying a motion to dismiss based on a forum selection clause, the Court stated that the "right to limit trial to [a particular] forum" is a right that is "different in kind from the entitlement to avoid suit altogether." Digital Equipment, 511 U.S. at 874-75 (emphasis added) (internal quotation marks omitted).

Second, neither the history and purposes of GERA nor the procedures employed under GERA are designed to provide State employers with an "entitlement not to stand trial or face the other burdens of litigation" (OAG Mem. at 16-17 (internal quotation marks omitted)). GERA imports prohibitions against discrimination in government employment on the bases prohibited by Title VII (race, color, religion, sex, or national origin), the ADEA (age), the ADA (disability), and the Rehabilitation Act (disability). See 42 U.S.C. § 2000e-16b(a). The history of amendments to Title VII and the Rehabilitation Act, through the enactment of GERA in 1991, is most instructive.

Title VII as originally enacted in 1964 did not apply to the States or their political subdivisions, because the definition of the "person[s]" who were "employer[s]" forbidden to discriminate did not include States or their political subdivisions, see 42 U.S.C. § 2000e(a)-(b) (1964).

15

And "employee" was defined simply as "an individual employed by an employer," id. § 2000e(f) (1964). In 1972, Title VII was amended to define "person" to include "governments, governmental agencies, [and] political subdivisions," Pub. L. No. 92-261, § 2, 86 Stat. 103, 103, thereby expanding the protections of Title VII to, inter alia, State government employees, see 42 U.S.C. § 2000e(a)-(b) (1976). But "employee" was redefined to exclude

> any person elected to public office in any State or political subdivision of any State by the qualified voters thereof, or [1] any person chosen by such officer to be on such officer's personal staff, or [2] an appointee on the policy making level or [3] an immediate adviser with respect to the exercise of the constitutional or legal powers of the office.

Id. § 2000e(f) (1976) (emphases added).

The States' exemption from suits by the above three categories of appointed employees (the "special-level appointees") was undone by GERA. Passed as part of the Civil Rights Act of 1991, GERA extends Title VII's protections to precisely these categories of employees, giving them, for the first time, the right, as described in Part I.B. above, to sue their State employers in an administrative forum, see Pub. L. No. 102-166, §§ 302, 307, 321(a), 105 Stat. 1071, 1088, 1091-92, 1097-98, codified as amended at 42 U.S.C. §§ 2000e-16a, 2000e-16b, and 2000e-16c. Thus, with respect to a State whose special-level appointees claim employment discrimination in violation of Title VII, GERA is the very antithesis of an immunity statute.

Nor does GERA provide immunity to a State whose employees claim discrimination in violation of the Rehabilitation Act--legislation that has never provided an exemption for special-level appointees. Enacted in 1973--the year after Title VII was amended to apply to the States--the Rehabilitation Act provides, inter alia, that "[n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, . . . be subjected to discrimination

16

under any program or activity receiving Federal financial assistance . . . ." 29 U.S.C. § 794(a) (emphasis added). This statute, whose first stated "purpose[] [is] . . . to empower individuals with disabilities to maximize employment," id. § 701(b)(1)--and the 1986 amendments to it, enacted to clarify that it was intended to apply to all federally funded programs, including State government programs, and to abrogate States' Eleventh Amendment immunity in suits under, inter alia, § 794, see Pub L. No. 99-506, § 1003, 100 Stat. 1807, 1845--do not contain a definition of employee and do not distinguish between employees who are special-level appointees of elected officials and other employees. Thus, GERA did not mark the inception of the rights of special-level appointees to sue the State for disability discrimination in violation of the Rehabilitation Act, those appointees not having previously been excepted from the coverage of that Act; GERA merely changed the forum in which such already authorized claims could be initiated.

Finally, although OAG states that GERA provides "a special procedure for adjudicating the[] claims" of a State's special-level appointees (OAG Mem. at 13), the administrative proceeding in fact strongly resembles civil litigation in federal court, as State defendants are neither excused from participating in pretrial discovery, motion practice, and trial, nor spared the possibility of being held liable and ordered to provide substantial relief. Under GERA and regulations promulgated by the EEOC, a complaint that on its face is timely and states a claim within the scope of GERA is referred to an administrative law judge ("ALJ"), see 29 C.F.R. §§ 1603.107(a), 1603.201, who oversees adjudication of the claim. Pretrial discovery in GERA proceedings is governed by the Federal Rules of Civil Procedure; parties may seek evidence through "written interrogatories . . . , depositions upon oral examination or written questions, requests for production of documents or things for inspection or other purposes, requests for admission or any other method found reasonable

17

and appropriate by the administrative law judge." Id. §§ 1603.210(b) and (c). See also id. § 1603.109 (Commission may conduct a fact-finding investigation into the complaint prior to referring the complaint to an ALJ, including by issuing "subpoena[s] requiring the attendance and testimony of witnesses" and requiring "the production of evidence and access to evidence").

The ALJ is given numerous "powers necessary to conduct fair, expeditious, and impartial hearings." Id. § 1603.202. For example, he may issue subpoenas "requiring the attendance and testimony of witnesses and the production of any evidence," id. § 1603.211(a); he may "administer oaths and affirmations," "rule on offers of proof and receive relevant evidence," "dispose of procedural requests or similar matters," and otherwise "regulate the course of the hearing," 5 U.S.C. § 556(c). He may "[e]nter a default decision against a party," and "[t]ake any appropriate action authorized by the Federal Rules of Civil Procedure," 29 C.F.R. §§ 1603.202(b) and (c).

At a hearing, evidence is received in accordance with the Federal Rules of Evidence, with the exception that the hearsay rules are not strictly applied. See id. § 1603.214. There is no jury; the matter is decided by the ALJ, who must issue "findings of fact and conclusions of law," and must "order appropriate relief where discrimination is found." Id. § 1603.217(a).

The available remedies for a violation of GERA include not only equitable relief (including backpay), but also attorney's fees, compensatory damages, and interest. See 42 U.S.C. §§ 2000e-16b(b)(1) and 2000e-16c(e). A party aggrieved by the ALJ's ruling may administratively appeal to the Commission, see 29 C.F.R. § 1603.301. A party aggrieved by a final order of the EEOC may seek judicial review in a federal circuit court, see 42 U.S.C. § 2000e-16c(c), which is to "decide all relevant questions of law and interpret constitutional and statutory provisions," and set aside the order if it is determined to be "(1) arbitrary, capricious, an abuse of discretion, or otherwise not

18

consistent with law; (2) not made consistent with required procedures; or (3) unsupported by substantial evidence," id. § 2000e-16c(d).

In sum, GERA allows States to be sued in administrative proceedings. To be sure, GERA's shifting of the initial adjudication of disability discrimination claims from a judicial to an administrative forum, with the normal procedural framework for such administrative proceedings, may substantively affect such matters as the parties' rights to a jury trial, the quantum of proof governing administrative factfinding, and the standard of review to be applied upon judicial review. But the State must either defend against a timely complaint that asserts a facially valid claim of employment discrimination under the relevant statutes or risk being held in default. And upon findings supported by substantial evidence, the State may be held liable for monetary or equitable relief. GERA's forum change for claims of disability discrimination, contrary to OAG's suggestion, does not provide the State with a status anything like immunity.

There being no important interest such as an immunity at issue here, the ruling of the district court--that it has subject matter jurisdiction because the record indicates that Fischer was not employed at a policymaking level--can be adequately reviewed on appeal from the final judgment in the action. If that ruling is found to have been erroneous, Fischer can pursue her claim only in an administrative proceeding; that this would entail additional litigation expense does not justify an immediate appeal. The appeal from the final judgment "is vindication enough because the right [to be sued only in a particular forum] is not sufficiently important to overcome the policies militating against interlocutory appeals," even "when the right not to be tried in a particular court has been created through jurisdictional limitations established by Congress." Lauro Lines, 490 U.S. at 503 (Scalia, J., concurring).

19

## CONCLUSION

We have considered all of OAG's arguments in support of appellate jurisdiction and have found them to be without merit. The motion to dismiss the appeal is granted.