# United States Court of Appeals
# for the Second Circuit

August Term, 2023

Argued: September 18, 2023
Decided: November 20, 2023

Docket No. 21-2628(L), 21-2851(Con)

ALEXANDER ROSA,

*Plaintiff-Appellant*,

v.

JOHN DOE, COMMISSIONER, JOHN DOE, WARDEN, VIKI S. BLUMBERG, MEDICAL DOCTOR, BARONE, WARDEN, VIKTORIA STORK, ROSE, NURSE,

*Defendants-Appellees*.

_____

Before:      CALABRESI, LEE, and PÉREZ, *Circuit Judges*.

Alexander Rosa brought this action alleging that he received constitutionally inadequate medical care as an inmate in the custody of the Connecticut Department of Correction. But before the district court could proceed with his case, Rosa, like all civil litigants in federal court, was required to pay a filing fee of $402. Rosa believed he could not pay the fee while also paying for the necessities of life. So, he moved for leave to proceed *in forma pauperis* under 28 U.S.C. § 1915, which would allow Rosa to bring his suit without having to prepay the full filing fee. The United States District Court for the District of Connecticut denied Rosa's motion, finding that the prison provided Rosa's necessities of life. Rosa moved for reconsideration, and the district court again denied his motion. On reconsideration, the district court found that Rosa had the resources to pay for both the necessities of life and the filing fee but had instead chosen to prioritize

contributions to his family members for their necessities. Rosa argues that both conclusions are the result of legal error. We agree and conclude that Rosa has demonstrated that he lacks the resources to pay the costs of the lawsuit and for his own necessities of life and those of his dependents. We therefore REVERSE, finding that Rosa's motion meets the standard of 28 U.S.C. § 1915(a), and remand for consideration of the rest of § 1915's requirements.

_____

> RACHEL ZHU, Rule 46.1(e) Law Student (Michael W. Martin, Ian Weinstein, Lincoln Sq. Legal Serv., Inc., *on the brief*), New York, NY, *for Plaintiff-Appellant Alexander Rosa*.

_____

CALABRESI, *Circuit Judge*:

Plaintiff-Appellant Alexander Rosa appeals from a judgment of the United States District Court for the District of Connecticut (Merriam, *J.*). Rosa believed that the Connecticut Department of Correction violated his Eighth Amendment rights by providing him with insufficient medical care. So, Rosa, acting pro se, sought relief in federal court by filing this suit.

Like all civil litigants, however, Rosa had to pay a filing fee before the court could proceed with his case. *See* 28 U.S.C. § 1914. Believing that payment of the $402 filing fee would render him unable to pay for essentials, Rosa moved for leave to proceed *in forma pauperis* under 28 U.S.C. § 1915. *In forma pauperis* status allows

prisoners like Rosa to bring suits without the obligation to prepay certain fees, including the $402 filing fee, and allows non-incarcerated litigants to proceed entirely without paying such fees. The district court denied Rosa's motion, reasoning that the prison provided for Rosa's necessities of life and that Rosa's account contained more than the $402 required to pay the filing fee. On reconsideration, the district court again ruled against Rosa, further reasoning that funds Rosa chose to give his mother and son, even if for their essentials, could have instead been used to pay the filing fee in his suit. On appeal, Rosa argues that the district court erred in two ways: first, by considering only Rosa's necessities of life and not the necessities of life of Rosa's dependents, and second, in concluding that the prison provided all of Rosa's necessities. We agree with Rosa as to both mistakes and therefore reverse.

## BACKGROUND

Alexander Rosa is an inmate in the custody of the State of Connecticut at Osborn Correctional Institution. In January 2019, Rosa entered Connecticut State custody at Bridgeport Correctional Center. Shortly thereafter, Rosa reported to prison medical staff that he had recently suffered a broken collarbone in a car accident. He also notified medical staff that he had long-running pain in both

shoulders and his right knee, and that he had been injured in two shootings years prior. Over the ensuing months, Rosa asserts that he repeatedly sought medical care to little effect. Eventually, Rosa received some medical care, including the removal of bullet fragments from his shoulder. Still, allegedly, Rosa's pain persisted, and a bullet lodged near Rosa's lower femur brought him significant discomfort.

On April 5, 2021, Rosa filed a pro se complaint in the United States District Court for the District of Connecticut. The complaint charged that Rosa received insufficient medical care in violation of his Eighth and Fourteenth Amendment rights and sought damages under 42 U.S.C. § 1983. The complaint also sought injunctive relief requiring further medical treatment and an order "to be cuffed in front and a permanent bottom bunk pass." App'x 12**.**

But filing a lawsuit in federal court is an expensive process. For his complaint to be deemed received, a civil claimant like Rosa must pay the court $402 in fees.[1] Unfortunately, 63% of adults in the United States report not having

---

[1] The civil filing fee is $350. 28 U.S.C. § 1914(a). The Schedule of Fees set out following the statute also requires an additional administrative fee of $52 for filing any civil case. *District Court Miscellaneous Fee Schedule*, U.S. Courts, https://www.uscourts.gov/services-forms/fees/district-court-miscellaneous-fee-schedule (last visited Nov. 16, 2023).

the savings to cover that unexpected expense.[2] *Report on the Economic Well-Being of U.S. Households in 2022*, Bd. Governors Fed. Res. Sys. (May 2023), https://www.federalreserve.gov/publications/2023-economic-well-being-of-us-households-in-2022-executive-summary.htm. To remedy the risk that litigants with meritorious claims but without financial resources might be denied their day in court, American law has a well-established tradition of allowing impoverished litigants to proceed *in forma pauperis* and bring their suit without prepayment of court fees. Accordingly, Rosa submitted a motion for leave to proceed *in forma pauperis* along with his complaint, requesting that the court allow him to proceed without prepayment of the $402 filing fee.

The *in forma pauperis* tradition in the United States builds on a long English tradition of fee waivers for impoverished litigants, codified by statute in England in 1495. *See* An Acte to Admytt Such P[er]sons as Are Poore to Sue In Forma Paup[er]is, 11 Hen. 7 c. 12 (1495). The 1495 statute was preceded by a common-

---

[2] Incarcerated people like Rosa may well face even greater obstacles to securing the finances necessary to bring a claim in federal court. On average, incarcerated people earn between $0.86 and $3.45 per day working prison jobs. Wendy Sawyer, *How much do incarcerated people earn in each state?*, Prison Policy Initiative (Apr. 10, 2017), https://www.prisonpolicy.org/blog/2017/04/10/wages/. Imprisoned in Connecticut, Rosa might expect to earn between $0.75 and $1.75 per day. Conn. Gen. Assemb. Off. Legis. Rsch., Inmate Wages, 2018-R-0179, at 1 (2018); *see also* Conn. Gen. Stat. § 18-85 (2023) (capping inmate pay at $10 per week).

law right to proceed *in forma pauperis*. *See Brunt v. Wardle* (1841) 133 Eng. Rep. 1254, 1257; 3 Man. & G. 534, 542 (Chief Justice Tindal: "[A]fter all, is the 11 H[en]. 7, c. 12, any thing more than confirmatory of the common law?"). Indeed, even earlier, by 1295 the English ecclesiastical courts had statutorily codified an expansive *in forma pauperis* procedure. *Statuta Rob. Cantuar. Archiep. De Consistorio (1295), in* 2 Concilia Magnae Britanniae et Hiberniae, A Synodo Verolamiensi A.D. CCCXLVI ad Londinensem A.D., MCCCXLIX 206 (David Wilkins ed., 1737).

Our own *in forma pauperis* tradition is similarly well-established. In 1892, Congress codified the ability of federal courts to allow litigants to proceed *in forma pauperis*. The language regarding eligibility for *in forma pauperis* status enacted by this statute remains essentially the same today: litigants can proceed "without being required to prepay fees or costs, or give security therefor" if the litigant submitted an affidavit representing that "because of his poverty, he is unable to pay."[3] Act of July 20, 1892, ch. 209, § 1, 27 Stat. 252, 252. Moreover, before this federal codification, many states had either passed *in forma pauperis* statutes or had

---

[3] By its terms, the 1892 statute extended *in forma pauperis* status for "plaintiffs" and "United States citizens" only, but the statute has been amended several times since 1892. The statute was amended to include appellants, Act of June 25, 1910, ch. 435, § 1, 36 Stat. 866, 866, and noncitizens, Act of Sept. 21, 1959, Pub. L. No. 86-320, 73 Stat. 590.

held that they had inherited *in forma pauperis* as part of their adoption of the English common law.  John MacArthur Maguire, *Poverty and Civil Litigation*, 36 HARV. L. REV. 361, 381-90 (1923).

The federal *in forma pauperis* statute represents a significant effort to ensure the ability of impoverished litigants to prosecute meritorious claims or defenses without disadvantage.  The Supreme Court has described the 1892 statute as aiming "to lower judicial access barriers to the indigent." *Denton v. Hernandez*, 504 U.S. 25, 31 (1992).  The House Report accompanying the statute labels it as confronting the problem that "persons with honest claims may be defeated, and doubtless often are, by wealthy adversaries."  H.R. Rep. No. 52-1079, at 1 (1892). The House Report suggests that without this statute, "the Government allow[s] its courts to be practically closed to its own citizens, who are conceded to have valid and just rights, because they happen to be without the money to advance pay to the tribunals of justice." *Id.* at 2.

Rosa's motion was submitted under the current *in forma pauperis* statute, 28 U.S.C. § 1915.  This statute allows litigants to bring a suit "without prepayment of fees or security therefor" so long as the litigant submits an affidavit "that includes a statement of all assets" that the litigant possesses.  § 1915(a)(1).  The statute has

somewhat different requirements for prisoners, reflecting amendments made to it as part of the 1996 Prison Litigation Reform Act ("PLRA"). As a result of these amendments, 28 U.S.C. § 1915 now requires prisoner-litigants to "submit a certified copy of the trust fund account statement . . . for the 6-month period" before the commencement of the suit. § 1915(a)(2). Additionally, prisoners are eligible only for a payment plan for court costs rather than a full waiver. § 1915(b). Nonetheless, the statute relieves prisoners, if otherwise eligible, of their obligation to prepay court fees before the court can consider the complaint received.

Though the PLRA instituted substantial changes to Section 1915, it did not change the substantive Section 1915(a) standard that movants must meet in order to qualify for *in forma pauperis* status. The Supreme Court, interpreting the same "unable to pay" language still found in Section 1915(a), laid out that eligibility standard in *Adkins v. E.I. DuPont de Nemours & Co.*, 335 U.S. 331 (1948): A litigant need not be "absolutely destitute" to qualify for *in forma pauperis* status but need demonstrate only that they "cannot because of [their] poverty pay or give security for the costs and still be able to provide [themselves] and dependents with the necessities of life." *Id.* at 339 (internal quotations omitted); *see also Potnick v. E. State Hosp.*, 701 F.2d 243, 244 (2d Cir. 1983) (per curiam) (applying the *Adkins* standard

to hold that the financial condition of a plaintiff whose income was less than the federal poverty level warranted leave to proceed *in forma pauperis*).

The PLRA did, however, require that an incarcerated movant for *in forma pauperis* status demonstrate that their complaint does not present an obviously fatal defect. *See* 28 U.S.C. § 1915(e)(2) (providing that "the court shall dismiss" a case in which "the allegation of poverty is untrue" or the action or appeal "is frivolous or malicious," "fails to state a claim on which relief may be granted," or "seeks monetary relief against a defendant who is immune from such relief"). Thus, a determination of whether an incarcerated movant qualifies for *in forma pauperis* status now requires district courts to engage in two distinct tasks: first, they must evaluate whether the movant has met Section 1915's substantive standard, § 1915(a), and second, they must review the merits of the movant's complaint, § 1915(e)(2).

Rosa moved for leave to proceed *in forma pauperis* by submitting the form provided by the District of Connecticut Clerk's Office for prisoners seeking to proceed *in forma pauperis* in a civil action. The form asked, *inter alia*, for Rosa's income and any other sources of money, the current balance of his inmate account, the total value of property that he owned, and his approximate monthly

contributions to support family members. App'x 100-02. Rosa's answers indicated that he had no income, supported his mother and son with monthly payments totaling $86.66, and had an account balance of $576.98 at the time of filing. Rosa attached a certification from a prison official indicating that, over the last six months, Rosa's inmate account had an average balance of $601.64 and average monthly deposits of $74.41. Rosa also attached screenshots showing his inmate account transactions over a period of about ten months. These screenshots show frequent debits for commissary purchases and postage and credits for inmate pay (usually between $5 and $25). The screenshots also show three much larger credits for stimulus payments and several debits coded by the account system as "special requests," ranging from less than $100 to as much as $600.

Alongside his motion for leave to proceed *in forma pauperis*, Rosa moved for the appointment of counsel under 28 U.S.C. § 1915(e). As with Rosa's *in forma pauperis* motion, Rosa's motion for appointment of counsel was submitted using a form provided by the District of Connecticut. Both motion forms ask for detailed financial information. Rosa's motion for appointment of counsel reaffirmed that his income was limited, that his prison account had a balance of $576.98 at the time of filing, and that his mother and his son were his "dependents." Additionally,

the motion form for appointment of counsel asked for an itemized list of debts. Rosa listed more than $1,500 in debts, the vast majority of which were fees for ambulance services.

The district court denied Rosa's motion to proceed *in forma pauperis* on the basis of the information submitted in his motion form. The district court noted that Rosa reported receiving $1,200 in income from federal COVID stimulus funds and had an average balance of about $600 over the last six months in his prison account. The district court further noted that "[a]s a prisoner, Rosa does not pay for room or board." App'x 123-24. Following previous decisions of the District of Connecticut, the district court evidently concluded that the prison provided Rosa's necessities of life. Accordingly, because Rosa's inmate account contained more than the $402 required to pay the filing fee, and because Rosa's room and board were provided by the prison, the district court held that it could "discern no reason why requiring Rosa to pay the filing fee of $402 would force him to forego the necessities of life or abandon this action." App'x 124.

Rosa filed several additional documents with the district court contesting this ruling. In these filings, Rosa provided further details of his financial situation. He responded to the district court's analysis of his receipt of stimulus funds by

explaining that he sent those funds to his mother and son to pay for their housing and other necessities. The district court construed Rosa's additional filings as a motion for reconsideration and denied the motion.[4] On reconsideration, the district court noted that the federal stimulus funds Rosa received were "more than enough to pay the filing fee" and concluded that "[w]hile the desire to help his family is admirable, plaintiff still made a choice to do so rather than paying the filing fee." App'x 148.

Rosa timely appealed to this Court.[5] On appeal, Rosa argues that the district court erred in requiring Rosa to choose between spending his funds on his family's necessities of life and using that money to file this suit. Rosa further argues that the district court erred in concluding that the prison provided his necessities of life. On these facts, Rosa contends that the record demonstrates that his financial condition meets Section 1915(a)'s standard. We agree with Rosa, reverse the district court's order and remand for further proceedings.

---

[4] Until this point in the litigation, the case had been before Judge Jeffrey A. Meyer, who issued the initial ruling on Rosa's motion to proceed *in forma pauperis*. The case was then transferred to Judge Sarah A. L. Merriam, who ruled on the motion for reconsideration.

[5] We appointed counsel for purposes of this appeal.

**DISCUSSION**

We have jurisdiction over this appeal because a district court order denying an application to proceed *in forma pauperis* is immediately appealable. *See Fischer v. N.Y. State Dep't of L.*, 812 F.3d 268, 275 (2d Cir. 2016) (citing *Roberts v. U.S. Dist. Ct.*, 339 U.S. 844, 845 (1950)). Additionally, Rosa's motion for reconsideration was filed within twenty-eight days of the underlying final judgment. Fed. R. App. P. 4(a)(4)(A)(vi). As a result, on appeal, we review both the district court's ruling on reconsideration and the underlying final judgment. Fed. R. App. P. 3(c)(5)(B); *cf. Bailey v. Interbay Funding, LLC*, No. 21-146, 2022 WL 852851 (2d Cir. Mar. 23, 2022) (reviewing only the ruling on reconsideration where a movant's reconsideration motion was filed more than three months after the underlying final judgment).

We review the denial of a motion to proceed *in forma pauperis* for abuse of discretion. *See Potnick*, 701 F.2d at 244. "An abuse of discretion exists if the district court (1) based its ruling on an erroneous view of the law, (2) made a clearly erroneous assessment of the evidence, or (3) rendered a decision that cannot be located within the range of permissible decisions." *City of New York v. Golden Feather Smoke Shop, Inc.*, 597 F.3d 115, 119-20 (2d Cir. 2010) (internal quotations and citations omitted).

13

**I**

As a preliminary matter, the State of Connecticut argues for affirmance of the district court's orders on the ground that, for procedural reasons, we cannot consider Rosa's argument that he spent funds to support his family members.[6] Connecticut presents two arguments: (1) that Rosa improperly "attempt[s] to present new facts" in his motion for reconsideration in describing that he sent the stimulus funds he received to his dependents, Conn. Br. 16, and (2) that this Court can only consider facts, and arguments reliant on facts, listed in the affidavit required by Section 1915(a), Conn. Br. 20-22.

We disagree. The *in forma pauperis* law is not meant to be a series of traps and travails for pro se litigants, nor does it aim to dismiss potentially meritorious arguments because of the particularities of federal practice. And "[i]t is well established that a court is ordinarily obligated to afford a special solicitude to *pro se* litigants." *Tracy v. Freshwater*, 623 F.3d 90, 101 (2d Cir. 2010) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). This special solicitude "most often consists of liberal construction of pleadings, motion papers, and appellate briefs," *id.* at 101

---

[6] The State of Connecticut would have represented the various defendants had process been served in this case. Because process has not been served, Connecticut appeared at this stage only as an *amicus*. Brief *Amicus Curiae* State of Connecticut in Support of Affirmance at 1 (hereinafter "Conn. Br.").

14

(citing *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam)), and includes leniency in the application of procedural rules, *LeSane v. Hall's Sec. Analyst, Inc.*, 239 F.3d 206, 209 (2d Cir. 2001).[7] *See generally Tracy*, 623 F.3d at 101-02 (collecting cases affording procedural leniency to pro se litigants).

Here, "construed liberally and interpreted to raise the strongest arguments that they *suggest*," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (internal quotations and citations omitted), Rosa's submissions certainly present the claim that Rosa needed funds to support his family and had a history of supporting his family. Rosa listed his mother and son as dependents on his motion for leave to proceed *in forma pauperis* and again on his motion for appointment of counsel. Rosa's motion for leave to proceed *in forma pauperis* listed monthly payments he made to support his mother and son. And the screenshots of his inmate account show withdrawals in amounts similar to those that Rosa claimed as the monthly support he provided his mother and son. Liberally construing the pattern of debits to Rosa's inmate account from funds sent to his

---

[7] We are especially loathe to construe strictly procedural rules against a pro se litigant where the motion in question was submitted according to a form provided by the court. If, as here, the form fails to ask for potentially relevant information, it would be perverse to hold that failure against the litigant. As the author of the form, the court can easily add additional instructions or questions ensuring that necessary information is submitted. A litigant who earnestly responds to the questions that the court asks should not be penalized by the court's failure to ask for basic information the court in fact requires.s

mother and son, we hold that Rosa's assertion that he utilized his inmate account funds to support his dependents was sufficiently presented in Rosa's original motion.[8]

## II

We turn next to the issue of whether the district court properly analyzed Rosa's motion under Section 1915(a)'s standard. Rosa first argues that the district court erred in limiting its analysis to his own necessities of life and failing to consider his dependents' necessities of life in its Section 1915(a) determination. On reconsideration, the district court recognized that Rosa's choice to send funds to his family members was "admirable," but noted that those funds could have instead been used to pay the costs of his suit. App'x 148. Rosa contends that this was error because Section 1915(a)'s substantive standard contemplates that the necessities of life of the movant and those of his dependents are to be considered in determining *in forma pauperis* eligibility.

We agree with Rosa. An *in forma pauperis* motion meets Section 1915(a)'s standard when it demonstrates that the applicant cannot "pay or give security for

---

[8] Because we find that Rosa's original motion and accompanying affidavit sufficiently raised the arguments in question, we need not consider whether a court can consider information submitted outside the affidavit required by Section 1915(a).

the costs and still be able to provide himself and *dependents* with the necessities of life." *Adkins*, 335 U.S. at 339 (emphasis added) (internal quotations omitted). To require *in forma pauperis* applicants to "have sworn to contribute to payment of costs[] the last dollar they have . . . and thus make themselves and their dependents wholly destitute[] would be to construe the statute in a way that would throw its beneficiaries into the category of public charges." *Id*. *Adkins* explicitly acknowledges that others might financially depend on litigants and thus incorporates support of dependents into the Section 1915(a) standard. The district court thus erred in denying Rosa *in forma pauperis* status without considering his dependents' necessities of life.

Connecticut argues that Rosa's claims that his mother is a dependent and that he sent her funds to help her pay rent are implausible because she is non-elderly and because there was a federal eviction moratorium in place at the time. Conn. Br. 33-34. Connecticut's argument would have us apply a level of factual skepticism to Rosa's affidavit that the Supreme Court disfavors in Section 1915(a) analyses. *See Adkins*, 335 U.S. at 339 (providing that allegations made in satisfaction of Section 1915's procedural requirements "should ordinarily be accepted . . . particularly where unquestioned and where the judge does not

perceive a flagrant misrepresentation"). Here, Connecticut's challenges are based on unsupported speculation that we find unpersuasive. Thus, we accept Rosa's claims for purposes of the Section 1915(a) evaluation.

Connecticut further notes that no prior court has addressed whether a movant's parents may qualify as *Adkins* dependents. Conn. Br. 33-34. It is unnecessary for us to determine the outer bounds of who may be considered a dependent to resolve this case. Because of the unrestricted usage of the word "dependent" in *Adkins* and Congress's broad intent to enable poor litigants to access the courts in enacting this statute, at a minimum, immediate family members such as parents must be understood to qualify. Moreover, any reasonable definition of dependent includes the potential for dependent parents. *See, e.g.*, 26 U.S.C. § 152 (defining the word "dependent" for tax code purposes as "(1) a qualifying child, or (2) a qualifying relative" who meets certain statutory criteria); *Dependent*, WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 604 (1966) (defining "dependent" as "one relying on another for support").

Second, Rosa argues that the district court erred by failing to consider that Rosa, while incarcerated, might nonetheless require funds for his own necessities of life. Appellant's Br. 20-23. Connecticut instead contends that it provides

prisoners like Rosa with all the necessities of life. Conn. Br. 23-27. And it was on this basis that the district court denied *in forma pauperis* status. The court found that the prison provided for Rosa's room and board and considered no other necessities that Rosa might require. On reconsideration, the district court likewise failed to discuss any necessities that might require Rosa's funds. In view of this holding, the court concluded that any funds in Rosa's inmate account were not required for Rosa's necessities of life.

This was error. Despite their incarceration, prisoners maintain their own, often complex, economic lives. *Adkins* explains that the aim of *in forma pauperis* status is to prevent individuals from becoming "public charges" because of the costs of a suit. *Adkins*, 335 U.S. at 339. It made clear that it would be anathema to the statute's purpose of "lower[ing] judicial access barriers to the indigent," *Denton*, 504 U.S. at 31, to require litigants to choose between bringing a suit and meeting their familial support or loan payment obligations. But, in addition—and implicit in what the reasoning of *Adkins* asks courts to recognize—prisoners may well have financial obligations that warrant consideration in a Section 1915(a) evaluation: medical debts, court fines, student loans, support orders, among other examples. Moreover, prisons all too frequently fail to provide necessary hygiene

essentials and often charge substantial rates for postage and phone calls that prisoners need to maintain relationships with family and friends.[9]

It follows that an inquiry into whether a movant meets Section 1915(a)'s standard may not simply presume that, because incarceration provides food and lodging, the movant does not need any financial resources to secure necessities. And a court may not simply assume that an incarcerated movant with more than $402 in their inmate account requires no resources for their own necessities of life and hence is ineligible for *in forma pauperis* status. Courts must instead carefully consider whether the motion and the attached inmate account details demonstrate a need for the applicant to maintain some of their own funds for necessities.

**III**

Having found that the district court erred because prisoners like Rosa may still have economic needs and because *Adkins* understands Section 1915(a)'s standard to consider support for dependents, we turn to Rosa's contention that his motion in fact meets Section 1915(a)'s standard. We hold that it does and, in

---

[9] *See* Tiana Herring, *For the poorest people in prison, it's a struggle to access even basic necessities*, Prison Policy Initiative (Nov. 18, 2021), https://www.prisonpolicy.org/blog/2021/11/18/indigence/; Timothy Williams, *The High Cost of Calling the Imprisoned*, New York Times (Mar. 30, 2015) https://www.nytimes.com/2015/03/31/us/steep-costs-of-inmate-phone-calls-are-under-scrutiny.html.

particular, that Rosa demonstrated that his financial condition precludes him from prepaying the costs of this suit while still providing the necessities of life for himself and his dependents.

Rosa's motion to proceed *in forma pauperis* demonstrated that he supported his family members with monthly payments of $86.66. At the time the motion was filed, Rosa's inmate account had a balance of $576.98. Though the *in forma pauperis* form that the court provided failed to inquire into Rosa's debts, his motion for the appointment of counsel lists more than $1,500 in debt. If denied *in forma pauperis* status, Rosa would be left with less than $200 in his inmate account to pay for service of process and any other future costs associated with this suit, as well as his debts and support of his dependents. As this court has held, "Section 1915(a) does not require a litigant to demonstrate absolute destitution; no party must be made to choose between abandoning a potentially meritorious claim or foregoing the necessities of life." *Potnick*, 701 F.2d at 244 (citing *Adkins*, 335 U.S. at 339).

Though Rosa would not be immediately destitute if required to pay the $402 filing fee, he has nonetheless established that he cannot pay the costs associated with this suit and still provide the necessities of life for himself and his dependents. Accordingly, we reverse the district court and direct the court to

consider whether Rosa, having met the standard of Section 1915(a), meets Section 1915's other requirements and is thus deserving of *in forma pauperis* status.

**CONCLUSION**

For the foregoing reasons, we **REVERSE** the judgment of the district court, and the case is remanded for further proceedings consistent with this opinion.