22-317-cv
*In re ALBA Petróleos de El Salvador S.E.M. de C.V.*

# United States Court of Appeals
# for the Second Circuit

---

August Term 2022
Submitted: March 17, 2023
Decided: September 18, 2023

No. 22-317

---

IN RE ALBA PETRÓLEOS DE EL SALVADOR S.E.M. DE C.V.[*]

---

On Appeal from the United States District Court
for the District of Connecticut

---

Before: PARK and LEE, *Circuit Judges*, and STEIN, *District Judge*.[†]

This case involves a dispute between two law firms, each of which claims the right to represent a Salvadoran company in its efforts to stave off a transnational judgment-collection effort. Specifically, the two firms are vying to defend ALBA Petróleos de El Salvador S.E.M. de C.V. ("ALBA") in the U.S. District Court for the District of Connecticut from the enforcement of a $45 million default

---

[*] The Clerk of Court is respectfully directed to amend the caption accordingly.

[†] Judge Sidney H. Stein of the United States District Court for the Southern District of New York, sitting by designation.

judgment obtained against Colombian narco-terrorist organizations. Marcos D. Jiménez appeared to represent ALBA. White & Case LLP moved to substitute itself as ALBA's counsel. Both purport to represent ALBA. White & Case argued that the political-question doctrine, the act-of-state doctrine, and Venezuelan law required the district court (Meyer, *J.*) to allow it to represent ALBA. Jiménez responded that he had the right to represent ALBA under Salvadoran law. The district court denied White & Case's motion, holding that the issue was governed by Salvadoran law, which authorized Jiménez's representation. White & Case filed an interlocutory appeal and, in the alternative, a petition for a writ of mandamus.

We lack appellate jurisdiction over this interlocutory appeal of the denial of a third-party motion to substitute counsel. Such an appeal fails to satisfy the requirements of the collateral order doctrine because the denial of a motion to substitute counsel is effectively reviewable after final judgment and does not implicate an important issue separate from the merits of the underlying action. White & Case also does not meet the demanding standard required to obtain a writ of mandamus. We thus **DISMISS** the appeal and **DENY** the petition for a writ of mandamus.

---

Claire A. DeLelle, Nicole Erb, Susan Grace, White & Case LLP, Washington, DC, *for Appellant*.

Marcos D. Jiménez, León Cosgrove Jiménez, LLP, Miami, FL, *for Appellee*.

---

PARK, *Circuit Judge*:

This case involves a dispute between two law firms, each of which claims the right to represent a Salvadoran company in its efforts to stave off a transnational judgment-collection effort.

2

Specifically, the two firms are vying to defend ALBA Petróleos de El Salvador S.E.M. de C.V. ("ALBA") in the U.S. District Court for the District of Connecticut from the enforcement of a $45 million default judgment obtained against Colombian narco-terrorist organizations. Marcos D. Jiménez appeared to represent ALBA.[1]   White & Case LLP moved to substitute itself as ALBA's counsel.   Both purport to represent ALBA.   White & Case argued that the political-question doctrine, the act-of-state doctrine, and Venezuelan law required the district court (Meyer, *J.*) to allow it to represent ALBA.   Jiménez responded that he had the right to represent ALBA under Salvadoran law.   The district court denied White & Case's motion, holding that Salvadoran law governed and authorized Jiménez's representation. White & Case filed this interlocutory appeal and, in the alternative, a petition for a writ of mandamus.

We lack appellate jurisdiction over this interlocutory appeal of the denial of a third-party motion to substitute counsel.   Such an appeal fails to satisfy the requirements of the collateral order doctrine because the denial of a motion to substitute counsel is effectively reviewable after final judgment and does not implicate an important issue separate from the merits of the underlying action.   White & Case also does not meet the demanding standard required to obtain a writ of mandamus.   We thus dismiss the appeal and deny the petition for a writ of mandamus.

---

[1] Jiménez was a sole practitioner during the trial court proceedings but joined León Cosgrove Jiménez, LLP during the pendency of this appeal.

## I. BACKGROUND

### A. ALBA

ALBA is a Salvadoran corporation that distributes Venezuelan oil in El Salvador. ALBA has two shareholders. The majority shareholder, with sixty percent ownership, is a subsidiary of Petróleos de Venezuela, S.A. ("PDVSA"), the national oil company of Venezuela. The minority shareholder is a nonprofit organization owned by a group of Salvadoran municipalities. The minority shareholder appointed Jaime Alberto Recinos Crespin, a Salvadoran national, to the ALBA board, and Crespin also serves as ALBA's legal representative.

### B. The *Caballero* Litigation

The plaintiff in the underlying lawsuit is Antonio Caballero, whose father, a former Colombian ambassador to the United Nations, was kidnapped, tortured, and assassinated by the Revolutionary Armed Forces of Colombia ("FARC"). *See Caballero v. Fuerzas Armadas Revolucionarias de Colombia*, No. 18-cv-25337, 2020 WL 7481302, at *1 (S.D. Fla. May 20, 2020). Caballero sued FARC and the Norte de Valle Cartel in the U.S. District Court for the Southern District of Florida under the Anti-Terrorism Act, 18 U.S.C. § 2333, and obtained a default judgment of over $45 million. *See id.* at *7.

Caballero alleges that ALBA is an agency or instrumentality of FARC due to its connection to PDVSA. He sued ALBA in the U.S. District Court for the District of Connecticut, seeking to enforce the default judgment from the Southern District of Florida against ALBA's account at Interactive Brokers, LLC of Greenwich,

4

Connecticut.   Initially, no parties appeared to oppose Caballero, so the district court entered a default judgment.[2]

Following the entry of default judgment, ALBA sought to intervene, represented by Jiménez and his local counsel.   White & Case and its local counsel then moved to substitute themselves for Jiménez as ALBA's counsel.   The district court held its decision on the motion to intervene pending its ruling on the motion to substitute counsel.   It ordered the attorneys to brief their authority to act for ALBA.

Developments in Venezuela provide context for the disagreement.   Beginning in 2019, two groups claimed control of the Venezuelan government: one affiliated with Nicolás Maduro and the other with Juan Guaidó.   The United States and El Salvador both recognized the Guaidó government.[3]   White & Case alleges that the Maduro faction "seized and maintained unlawful control of" PDVSA, after which the Guaidó faction established an "ad hoc administrative board to manage PDVSA's affairs."   Appellant's Br. at 2, 7.

Neither side questioned the factual basis of the other's authorization:

---

[2] The case was originally assigned to Judge Robert N. Chatigny. Following the default judgment, the case was reassigned to Judge Jeffrey A. Meyer.

[3] The Guaidó government was apparently dissolved in early 2023. *See, e.g.*, Kejal Vyas, *Venezuela's U.S.-Backed Opposition Removes Juan Guaidó as Its Leader*, WALL ST. J. (Dec. 30, 2022).   The parties have not indicated that these events have impacted the litigation, and "we ordinarily do not consider material not included in the record on appeal." *Keepers, Inc. v. City of Milford*, 807 F.3d 24, 29 n.14 (2d Cir. 2015) (cleaned up).

- Jiménez claimed that Crespin, ALBA's legal representative, hired him to defend ALBA. No party disputes that Crespin was ALBA's legal representative or that, under Salvadoran law, ALBA's legal representative was responsible for retaining counsel.

- White & Case claimed the Guaidó-backed ad hoc board of PDVSA, the parent of ALBA's majority shareholder, hired it to defend ALBA. It argued that under Venezuelan law, the ad hoc board had the authority to retain counsel for ALBA.[4]

The district court reasoned that "the dispute is ultimately about whether the law of El Salvador or the law of Venezuela should control." *Caballero v. Fuerzas Armadas Revolucionarias de Colombia*, 579 F. Supp. 3d 315, 321 (D. Conn. 2022). It held that the law of El Salvador governs based on the "presumption that the law of a company's state of incorporation governs . . . issues involving the internal affairs of a corporation." *Id.* (cleaned up). The district court rejected White & Case's argument that "the act of state doctrine require[d] [it] to defer to the law of Venezuela." *Id.* at 325. It thus concluded that Jiménez was ALBA's rightful counsel and later granted ALBA's motion to intervene.

---

[4] Neither the ad hoc board of PDVSA nor any other entity affiliated with White & Case moved to intervene.

6

White & Case filed this interlocutory appeal and petitioned for a writ of mandamus, putatively on behalf of ALBA. Jiménez moved to dismiss the appeal for lack of appellate jurisdiction.[5]

## II. DISCUSSION

Before considering the merits of an appeal, "we are obliged to assure ourselves that appellate jurisdiction exists." *Uniformed Fire Officers Ass'n v. de Blasio*, 973 F.3d 41, 46 (2d Cir. 2020). We lack jurisdiction over the appeal and deny the petition for a writ of mandamus.

A.    The Collateral Order Doctrine

We have appellate jurisdiction over "appeals from all final decisions of the district courts." 28 U.S.C. § 1291. "A final decision is typically one by which a district court disassociates itself from a case," "terminat[ing] an action." *Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 106 (2009) (cleaned up). In other words, the statute "disallow[s] appeal from any decision which is tentative, informal or incomplete." *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546 (1949). The final-judgment rule ensures "efficient judicial administration" and respects "the prerogatives of district court judges." *Mohawk Indus.*, 558 U.S. at 106.

---

[5] To be clear, neither White & Case LLP nor Marcos D. Jiménez is formally a party to this appeal. Instead, both claim to represent ALBA, their mutual putative client, and have each filed briefs on its behalf. We refer to Appellant as White & Case and Appellee as Jiménez for ease of reference and for the sake of clarity. But when the distinction between counsel and client is important, we refer to Appellant as "White & Case's client" and Appellee as "Jiménez's client."

7

But final decisions also include "a 'small class' of collateral rulings that, although they do not end the litigation, are appropriately deemed 'final.'" *Id.* (quoting *Cohen*, 337 U.S. at 545-46). "That small category includes only decisions that are conclusive, that resolve important questions separate from the merits, and that are effectively unreviewable on appeal from the final judgment in the underlying action." *Swint v. Chambers Cnty. Comm'n*, 514 U.S. 35, 42 (1995). "All three of the requirements for appeal under the collateral order doctrine must be met." *Fischer v. N.Y. State Dep't of Law*, 812 F.3d 268, 274 (2d Cir. 2016).

The Supreme Court has "repeatedly stressed" that the collateral order doctrine must not "swallow the general rule that a party is entitled to a single appeal, to be deferred until final judgment." *Digit. Equip. Corp. v. Desktop Direct, Inc.*, 511 U.S. 863, 868 (1994) (internal citation omitted). "This admonition has acquired special force in recent years with the enactment of legislation designating rulemaking, 'not expansion by court decision,' as the preferred means for" regulating interlocutory appeals. *Mohawk Indus.*, 558 U.S. at 113 (quoting *Swint*, 514 U.S. at 48); *accord Microsoft Corp. v. Baker*, 582 U.S. 23, 39-40 (2017).

We apply the collateral order doctrine to "the entire category to which a claim belongs," ignoring the "particular injustice[s]" alleged in "the litigation at hand." *Digit. Equip. Corp.*, 511 U.S. at 868 (cleaned up). Cases do not receive "individualized jurisdictional inquiry." *Mohawk Indus.*, 558 U.S. at 107.

Here, White & Case appeals from the district court's denial of its third-party motion to substitute counsel. The Supreme Court has categorized similar collateral orders according to the orders'

functions, rather than their rationales. *See Richardson-Merrell, Inc. v. Koller*, 472 U.S. 424, 426 (1985) ("orders disqualifying [opposing] counsel in a civil case"); *Flanagan v. United States*, 465 U.S. 259, 260 (1984) ("pretrial disqualification of defense counsel in a criminal prosecution"); *Firestone Tire & Rubber Co. v. Risjord*, 449 U.S. 368, 369 (1981) ("order[s] denying a motion to disqualify counsel for the opposing party in a civil case").

White & Case argues, however, that the relevant "category" of order is the "authoriz[ation] [of] representatives of an unrecognized government to appear in U.S. courts." Appellant's Br. at 52. There are two problems with this argument. First, it refers to the "particular injustice" White & Case alleges, not "the entire category to which [its] claim belongs." *Digit. Equip. Corp.*, 511 U.S. at 868. Indeed, the unusual posture of this case may make White & Case's proposed category—*i.e.*, authorizations of representatives of unrecognized governments—a category of one. Second, it would require us to put the merits cart before the jurisdictional horse. The premise of White & Case's framing—that Jiménez is "a known representative of the . . . interests of the illegitimate Maduro regime"—is itself a contested issue. Appellant's Br. at 2-3.[6]

Jiménez concedes that the district court conclusively resolved the substitution-of-counsel issue. So we must determine whether district court denials of third parties' motions to substitute a party's counsel (1) are effectively unreviewable after final judgment and (2)

---

[6] For the same reason, it would be difficult to say that the question whether Jiménez is a "representative[] of an unrecognized government," Appellant's Br. at 52, is "completely separate from the merits of the action," *Mohawk Indus.*, 558 U.S. at 105, as the collateral order doctrine requires.

present important issues separate from the merits. *See Mohawk Indus.*, 558 U.S. at 106.

B.  Reviewability After Final Judgment

First, denials of third-party motions to substitute counsel are effectively reviewable after final judgment. For this "class of claims, taken as a whole," interlocutory review is not "necessary to ensure effective review." *Id.* at 107-08. This conclusion incorporates "a judgment about the value of the interests that would be lost through rigorous application of a final judgment requirement," *Digit. Equip. Corp.*, 511 U.S. at 878-79, and in particular, "whether delaying review until the entry of final judgment 'would imperil a substantial public interest' or 'some particular value of a high order,'" *Mohawk Indus.*, 558 U.S. at 107 (quoting *Will v. Hallock*, 546 U.S. 345, 352-53 (2006)).

White & Case's client may appeal from a final judgment. The client is not a party, but we "have long allowed appeals by a nonparty when the nonparty has an interest that is affected by the trial court's judgment." *Rothstein v. Am. Int'l Grp., Inc.*, 837 F.3d 195, 204 (2d Cir. 2016) (cleaned up). "And we have not required that a nonparty *prove* that it has an interest affected by the judgment; rather, stating a plausible affected interest has been sufficient." *Id.* (cleaned up). "A nonparty may not appeal, however, when it is clear that it has no interest affected by the judgment." *Off. Comm. of Unsecured Creditors of Worldcom, Inc. v. SEC*, 467 F.3d 73, 78 (2d Cir. 2006).[7]

---

[7] It bears noting that White & Case did not need to rely on the collateral order doctrine—"the better practice is for such a nonparty to seek intervention for purposes of appeal; denials of such motions are, of course, appealable." *Marino v. Ortiz*, 484 U.S. 301, 304 (1988). White & Case's

The district court's judgment will affect White & Case's client. The client contends that the district court denied it the opportunity to proceed with its authorized counsel. Moreover, if the client is correct that it *is* ALBA, any judgment adverse to ALBA is necessarily also adverse to the client. These interests are less speculative than others we have held suffice to permit a nonparty to appeal. *See WorldCom*, 467 F.3d at 78-79 (collecting cases).[8]

An appeal from final judgment will also adequately protect the interests of White & Case's client. After final judgment, we may "vacat[e] [the] adverse judgment and remand[] for a new trial"—the standard way to remedy erroneous rulings. *Mohawk Indus.*, 558 U.S. at 109.

The Supreme Court has recognized that such review suffices for similar categories of district court orders. First, an "order refusing to disqualify counsel" on the motion of an opposing party is "reviewable on appeal after final judgment." *Firestone Tire & Rubber Co.*, 449 U.S. at 377. Should "the Court of Appeals conclude after the trial has ended that permitting continuing representation was prejudicial error, it would . . . vacate the judgment . . . and order a new trial," a "plainly adequate" remedy. *Id.* at 378. So too here.

---

client has not moved to intervene, and we express no opinion on the merit of such a motion.

[8] For the same reasons, we reject Jiménez's argument that White & Case lacks standing to bring this interlocutory appeal. Jiménez argues that White & Case "has no right to file an appeal to vindicate the interests" of ALBA, which "does not wish to appeal the Order" and did not retain White & Case. Appellee's Br. at 47-48. Those arguments conflate the merits and standing and simply assume that Jiménez is correct in its assertion that only he represents ALBA.

11

Second, when a district court *actually* disqualifies a party's counsel in a civil case, "the propriety of the trial court's disqualification order can be reviewed as effectively on appeal of a final judgment as on an interlocutory appeal." *Richardson-Merrell*, 472 U.S. at 438. This is so even though such an order could require a party to litigate to judgment without the counsel to which it is legally entitled. *See id.*

Third, the same principle applies to disqualifications of counsel in criminal cases. *See Flanagan*, 465 U.S. at 267. The requirement that a party defend against a prosecution to judgment, and potentially conviction, with the wrong counsel—a heavier burden than White & Case's here—is simply "one of the painful obligations of citizenship." *Id.*[9] In light of these precedents, we see no basis for treating this case differently.[10]

---

[9] We have similarly held that appeal from final judgment suffices in other types of disputes over the control of litigation. *See, e.g.*, *Ashmore v. CGI Grp., Inc.*, 860 F.3d 80, 88-89 (2d Cir. 2017) (substitution of bankruptcy trustee for natural person as plaintiff); *Metro Servs. Inc. v. Wiggins*, 158 F.3d 162, 165 (2d Cir. 1998) (appointment of lead plaintiff under Private Securities Litigation Reform Act); *Schwartz v. City of New York*, 57 F.3d 236, 238 (2d Cir. 1995) (withdrawal of counsel over client's objection); *Welch v. Smith*, 810 F.2d 40, 42 (2d Cir. 1987) (denial of party's motion to appoint counsel to pursue a 42 U.S.C. § 1983 claim); *see also, e.g.*, *Tracy v. Lumpkin*, 43 F.4th 473, 475 (5th Cir. 2022) (denial of a *pro se* motion to substitute federal habeas counsel); *Crain v. Sec'y, Fla. Dep't of Corr.*, 918 F.3d 1294, 1296 (11th Cir. 2019) (same).

[10] White & Case claims only case-specific prejudice, arguing that the district court caused "irreversible harm" to "the legitimacy and primacy of Venezuelan acts of state, the Ad Hoc Board's authority under those sovereign acts," and "the Executive Branch's recognition of the Interim

12

Lastly, we note that White & Case has other ways to protect its interests beyond an appeal from final judgment. It can attempt to appeal under 28 U.S.C. § 1292(b), which allows a district court to certify that its order turns on a substantial question of law and that interlocutory review is efficient. *See id.*[11] It can also petition for a writ of mandamus, as it did here. *See Linde v. Arab Bank, PLC*, 706 F.3d 92, 107 (2d Cir. 2013); *cf. United States v. Prevezon Holdings Ltd.*, 839 F.3d 227, 229 (2d Cir. 2016) (granting mandamus in a disqualification dispute). "While these discretionary review mechanisms do not provide relief in every case, they serve as useful safety valves for promptly correcting serious errors," mitigating the risk of "severe hardship" and thus the need for early appeal. *Mohawk Indus.*, 558 U.S. at 111-12 (cleaned up); *accord Firestone Tire & Rubber Co.*, 449 U.S. at 378 n.13.

We hold that denials of third-party motions to substitute counsel are effectively reviewable from final judgment.

C.     Importance and Separation from the Merits

Second, denials of third-party motions to substitute counsel do not implicate "an important issue completely separate from the merits of the action." *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 468 (1978).

Government." Appellant's Br. at 56. These do not relate to "the class of claims, taken as a whole." *Mohawk Indus.*, 558 U.S. at 107.

[11] Indeed, White & Case filed a belated § 1292(b) motion *after* filing this appeal. The district court denied the motion "without prejudice to prompt reconsideration in the event that the Second Circuit may request the issuance of an indicative ruling or in the event that the Second Circuit rules that it does not have appellate jurisdiction over the already-filed appeal." Dist. Ct. Dkt. 202. White & Case does not request that we seek an indicative ruling before disposing of this appeal.

An issue is not separate from the merits if its resolution requires the courts of appeals "to review the nature and content of [the merits] proceedings." *Richardson-Merrell*, 472 U.S. at 439. The parties agree that disputes about which counsel should rightfully represent a client do not turn on the merits.

But this requirement also "insists upon *important* questions separate from the merits," ensuring that "[t]he justification for immediate appeal [is] . . . sufficiently strong to overcome the usual benefits of deferring." *Mohawk Indus.*, 558 U.S. at 107.[12] In other words, an "important" issue is one "weightier than the societal interests advanced by the ordinary operation of final judgment principles." *Digit. Equip. Corp.*, 511 U.S. at 879. Moreover, early appeals are unlikely "to bring important error-correcting benefits" unless they turn on "purely legal matters" within the "comparative expertise" of appellate courts. *Johnson v. Jones*, 515 U.S. 304, 316 (1995); *see also Banque Nordeurope S.A. v. Banker*, 970 F.2d 1129, 1131 (2d Cir. 1992) (contrasting "important question[s] of law whose

---

[12] White & Case suggests that *Liberty Synergistics Inc. v. Microflo Ltd.*, 718 F.3d 138 (2d Cir. 2013), abrogated the collateral order doctrine's importance requirement. This is incorrect. *Liberty Synergistics* merely clarified that we "simply cop[y] the Supreme Court's formulation and [do] not attempt[] to craft some additional element that the Supreme Court has not yet recognized." *Id.* at 149 n.10. And the Supreme Court unambiguously requires the appealed issue to be important. *See Mohawk Indus.*, 558 U.S. at 107; *Will*, 546 U.S. at 351-53; *Digit. Equip. Corp.*, 511 U.S. at 878-79. We thus continue to assess importance when applying the collateral order doctrine. *See, e.g., United States v. Bescond*, 24 F.4th 759, 767-68 (2d Cir. 2021). *Liberty Synergistics* itself did so. *See* 718 F.3d at 148-49.

resolution will guide courts in other cases" with "merely the application of well-settled principles of law to particular facts").

Substitution-of-counsel disputes do not present "neat abstract issues of law" that "need only be answered once." *Liberty Synergistics*, 718 F.3d at 148. The right to represent a client is likely to turn on case-specific, idiosyncratic facts, such as the client's internal procedures for selection of counsel, the course of the litigation, and the history of communications between the parties. *Cf. Firestone Tire & Rubber Co.*, 449 U.S. at 377 (noting that the "decision whether to disqualify an attorney ordinarily turns on the peculiar factual situation of the case then at hand"). It may also involve the application of idiosyncratic law, as in this case, in which the parties appeal to the laws of El Salvador and Venezuela in addition to those of the United States. The interest in early resolution of these fact-intensive questions does not outweigh "the usual benefits of deferring" review, *Mohawk Indus.*, 558 U.S. at 107, nor would it "guide courts in other cases" given the "particular facts," *Kensington Int'l Ltd. v. Republic of Congo*, 461 F.3d 238, 241 (2d Cir. 2006) (cleaned up).

Moreover, a district court's order denying substitution of counsel does not implicate sufficiently important "value[s] of a high order." *Mohawk Indus.*, 558 U.S. at 107 (cleaned up). To be sure, immediate review of the district court's order would protect ALBA's putative interest in controlling the litigation. It may also protect White & Case's interest in representing its client. But we apply the collateral order doctrine categorically, and as explained above, the

15

Supreme Court has rejected the suggestion that controlling litigation is sufficiently important to justify the costs of interlocutory appeal.[13]

In the civil disqualification context, for example, the Supreme Court rejected the argument that an interlocutory appeal is needed "to vindicate the client's choice of counsel" or "the interest of the attorneys." *Richardson-Merrell*, 472 U.S. at 433 (cleaned up). Although not having counsel of choice imposes "significant hardship on litigants," the costs of "piecemeal appeal" are too high. *Id.* at 434, 440. Early appeals would "delay proceedings on the merits until the appeal is decided," even "when counsel appeals an entirely proper disqualification order." *Id.* at 434. Plus, the attorney's interest makes interlocutory review *less* desirable: the "personal and financial" element would incentivize attempts at obtaining such review. *Id.* The same costs and benefits are present here. In the criminal disqualification context too, the Supreme Court found that "[t]he costs of . . . expansion [of the collateral order doctrine] are great, and the potential rewards are small." *Flanagan*, 465 U.S. at 269. And White & Case, unlike a criminal defendant, has no Sixth Amendment interests at stake. *See Lainfiesta v. Artuz*, 253 F.3d 151, 154 (2d Cir. 2001) (noting that criminal defendants have a "qualified

---

[13] White & Case argues that the order is important because it "implicates important questions of State sovereignty and separation of powers" related to "the political question and act of state doctrines." Appellant's Br. at 54. Even if true, those issues are idiosyncratic to this appeal, and do not exist in "the class of claims, taken as a whole." *Mohawk Indus.*, 558 U.S. at 107. "That a fraction of [adverse] orders . . . harm[s] individual litigants in ways that are only imperfectly reparable does not justify making all such orders immediately appealable." *Id.* at 112 (cleaned up).

[Sixth Amendment] right to be represented by the counsel of [their] choice").

In short, "[w]e routinely require litigants to wait until after final judgment to vindicate valuable rights, including rights central to our adversarial system," such as civil choice of counsel. *Mohawk Indus.*, 558 U.S. at 108-09 (citing *Richardson-Merrell*, 472 U.S. at 426; *Flanagan*, 465 U.S. at 260). The interest in controlling litigation is impeded as much by decisions disqualifying counsel as by denials of motions to substitute counsel. It thus follows that denials of motions to substitute counsel do not implicate "important questions" of a "high order." *Id.* at 107. So we conclude that a denial of a motion to substitute counsel is not immediately appealable under the collateral order doctrine. We thus lack appellate jurisdiction and must dismiss the appeal.

D.    Petition for a Writ of Mandamus

We also deny White & Case's alternative arguments petitioning for a writ of mandamus. Mandamus is "drastic and extraordinary," requiring that there are "no other adequate means to attain the relief," the petitioner has a "clear and indisputable" right to the writ, and "the writ is appropriate under the circumstances." *Cheney v. U.S. Dist. Ct. for D.C.*, 542 U.S. 367, 380-81 (2004). White & Case cannot meet this high standard.

First, as explained above, White & Case has "other adequate means to attain the relief [it] desires," *id.* at 380 (cleaned up), namely, "obtain[ing] relief through the regular appeals process," *United States*

17

*v. Manzano* (*In re United States*), 945 F.3d 616, 623 (2d Cir. 2019).[14] Second, we are satisfied that the district court's resolution of the representation dispute did not amount to "a judicial usurpation of power, or a clear abuse of discretion." *Cheney*, 542 U.S. at 380 (cleaned up). White & Case conceded the foundations of the district court's order—that ALBA is a Salvadoran corporation governed by Salvadoran law, that legal representatives direct litigation under Salvadoran law, and that ALBA's legal representative hired Jiménez. White & Case's argument that the internal-affairs doctrine does not apply in the unique circumstances of this case is not so self-evident as to warrant granting mandamus.

## III. CONCLUSION

For the foregoing reasons, we **DISMISS** the appeal and **DENY** the petition for a writ of mandamus. We otherwise **DENY** all pending motions as moot.

---

[14] The rare cases in which we have granted mandamus as a substitute for collateral order appeal typically implicate extraordinary confidentiality interests such that waiting for final judgment would "let the cat out of the bag." *In re Roman Cath. Diocese of Albany, N.Y., Inc.*, 745 F.3d 30, 35 (2d Cir. 2014); *see Prevezon Holdings*, 839 F.3d at 237-38; *SEC v. Rajaratnam*, 622 F.3d 159, 169-70 (2d Cir. 2010); *In re City of New York*, 607 F.3d 923, 933-94 (2d Cir. 2010). No such circumstances exist here.